## Julia H.L. Goodrich v. Reginald G. Goodrich

[613 A.2d 203]

No. 90-270

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 2, 1992

*Agnes S. Hughes* of *Lamb & Hughes, P.C.*, Springfield, for Plaintiff-Appellee.

*Jeremy Dworkin*, South Londonderry, for Defendant-Appellant.

**Allen, C.J.** Defendant husband appeals from the property award in this divorce, challenging the court's valuation óf plaintiff's interest in a closely held family corporation. We affirm.

The parties were married in 1969 and separated in 1988. They have two children. Neither party brought substantial tangible assets into the marriage, but plaintiff later received from her mother and grandmother a total of 4,000 shares of the stock of Jamison Door Company, a company founded by plaintiff's great grandfather. These shares represented a little more than 5% of the total outstanding stock. All shares in the corporation are held by members of plaintiff's family. In addition to this stock, plaintiff inherited about $130,000 from her grandmother.

Plaintiff has worked outside of the home since 1973, mainly in clerical positions. Defendant received a college education during the marriage and in the course of nearly twenty years has had fifteen different jobs and business ventures, including his own carpet business, work for an excavating company, a tile business, a grinder company, a collection agency, a metals company, his own building business, and a hot tub business. The parties acquired a residence early in their marriage, and both worked to expand and remodel what was a camp into a home. The trial court found that defendant in 1986 or 1987 used about $20,000 from the corpus of a trust, which his aunt had set up for the parties' children, to support his building company and to purchase two family automobiles.

The trial court awarded the $37,000 net equity in the parties' home to defendant, but denied his request for a portion of plaintiff's Jamison Door shares, which the court valued at $97,000. The court made no adjustments to the parties' plan for the payment of marital debts.

### I. Valuation of Jamison Door Stock

Defendant's principal claim on appeal is that the trial court's

valuation of the Jamison Door stock was erroneous because the court applied inappropriate appraisal criteria. Defendant's expert, a certified public accountant, testified that a company of the size of Jamison Door should be appraised on the "formula method"—a computation based on the fair market value of the underlying net assets of the business. Using this method, the expert placed a value of $12,021,000 on Jamison Door, including good will. Based on that figure, the value of each share would be $153.46, making plaintiff's shares worth a total of $613,840.

The court rejected defendant's approach and accepted plaintiff's view that the valuation of the stock should reflect what a willing buyer would pay for the stock from a willing seller. Plaintiff's expert, also a certified public accountant, testified that the company had paid $1.97 in dividends in 1988 and $1.90 in 1989. He used the $1.97 figure to reach an annual income for the 4,000 shares of $7,880. Applying the current interest rate on U.S. Treasury bills, he calculated the sum that would be needed to yield that amount of income as $97,404 and offered that figure as the value of the stock, viewed from a "return on investment" perspective. The court accepted this figure as what a willing buyer would pay a willing seller. It declined to accept a higher valuation ($171,000) based on liquidation value, or a lower valuation ($37,000) based on the testimony of plaintiff's expert that the purchaser of such a small interest in a family business would expect a return of twenty-one percent. The court did not ignore defendant's position that an asset-based valuation should be applied. It stated in Finding 26:

> (d) . . . While it is true that the tangible assets and good will of the Jamison Door divided by the number of outstanding shares would place an equity value of $153.46 for each share of stock, the Court does not view this as the price a willing buyer would pay for each share to obtain a 5% interest in the company.

> (e) The Court finds that a more equitable manner of determining fair market value of the 4,000 shares would be based on the return on investment value approach. The Court finds that a willing buyer would look to his return on investment in making the purchase of such a small fraction as 5% of the total stock of the company.

██ On appeal defendant urges this Court to mandate a single methodology—the "formula method"—for determining the value of an interest in a closely held company. This we decline to do. The court's valuation was supported by credible evidence in the record, and thus is not clearly erroneous. *Morissette v. Morissette*, 143 Vt. 52, 61, 463 A.2d 1384, 1389 (1983); *Victor v. Victor*, 142 Vt. 126, 129, 453 A.2d 1115, 1117 (1982). Valuation of closely held stock is never an easy task. See, e.g., *Righter v. United States*, 439 F.2d 1204, 1207 (Ct. Cl. 1971); *In re Marriage of Hewitson*, 142 Cal. App. 3d 874, 882, 191 Cal. Rptr. 392, 397 (1983). As the New Jersey Supreme Court has recognized:

> There are probably few assets whose valuation imposes as difficult, intricate and sophisticated a task as interests in close corporations. They cannot be realistically evaluated by a simplistic approach which is based solely on book value, which fails to deal with the realities of the good will concept, which does not consider investment value of a business in terms of actual profit, and which does not deal with the question of discounting the value of a minority interest.

*Dugan v. Dugan*, 92 N.J. 423, 432, 457 A.2d 1, 6 (1983).

██ Defendant acknowledges that five alternative valuation methods were presented to the trial court, and the testimony of plaintiff's expert reflected that different approaches to valuation may be appropriate in different cases. The best method of valuation will necessarily depend on particular facts and circumstances, and federal Revenue Ruling 59–60, 1959-1 C. B. 237, heavily relied upon by defendant, reflects this proposition. It sets forth a nonexclusive list of fundamental factors affecting fair market value, including:

(a) The nature of the business and the history of the enterprise from its inception.

(b) The economic outlook in general and the condition and outlook of the specific industry in particular.

(c) The book value of the stock and the financial condition of the business.

(d) The earning capacity of the company.

(e) The dividend-paying capacity.

(f) Whether or not the enterprise has goodwill or other intangible value.

(g) Sales of the stock and the size of the block of stock to be valued.

(h) The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market, either on an exchange or over the counter.

*Id.* at 238–39.

In the present case, plaintiff's stock represents a minority interest in the corporation. This factor supports a discount because the shares are not readily marketable and could not convey a controlling interest in the company. A purchaser of plaintiff's interest would not receive guarantees of future dividends, and the record does not reflect any special rights or powers attending the minority interest. As one commentator has said about the dilemma of the minority stockholder whose interests are not being served by the majority:

> He can sell the stock to another outsider, in which event the price is likely to reflect a substantial discount by reason of the "captive" position of the investment in the corporation, or he can sell to the insiders. While there may be buyers at a favorable price if the insiders regard it as desirable to eliminate outside participation in the affairs of the corporation, the insider market is normally restricted. On balance it is fair to conclude that the price obtainable by the outsider for the minority shares normally will be substantially less than the pro rata asset and income values.

Feld, *The Implications of Minority Interest and Stock Restrictions in Valuing Closely-Held Shares*, 122 U. Pa. L. Rev. 934, 936–37 (1974); see also Schreier and Joy, *Judicial Valuation of "Close" Corporation Stock: Alice in Wonderland Revisited*, 31 Okla. L. Rev. 853 (1978). Here, defendant's expert did not consider the minority-interest factor in his appraisal.

Defendant relies on *Bowen v. Bowen*, 96 N.J. 36, 473 A.2d 73 (1984), a case in which the New Jersey Supreme Court considered valuation alternatives and suggested that on remand the "formula" method set forth in Rev. Rul. 59–60 would be an ap-

propriate basis to establish valuation. *Id.* at 52, 473 A.2d at 81. In that case, however, the court did not mandate any particular method of valuation or establish one method as generally suitable in valuing interests in close corporations. Significantly, the husband's stock interest in *Bowen* was not a "minority interest" in the sense of a small percentage of the outstanding stock, coupled with no apparent power to affect the management of the company. The husband in *Bowen* was one of three founders of the business, was employed full time there, and was a 22% shareholder. *Id.* at 40, 473 A.2d at 75. In fact, the trial court decree had limited the husband's total annual salary, bonuses, and fringe benefits to prevent him from unduly diminishing corporate earnings and decreasing the value of the wife's equitable interest in the stock. *Id.* at 41, 473 A.2d at 75. In the present case, plaintiff has none of these powers, and the benefits flowing from her ownership interest were largely determined by those in effective control of the company. Under these circumstances, it was not erroneous for the court to focus on the amount a willing buyer would pay to purchase plaintiff's interest in the company. The court's acceptance of plaintiff's appraisal method was well within its discretion.

Defendant next contends that plaintiff's expert relied on stale financial information as the basis for his testimony because the expert testified in February 1990 and his latest financial information was from August 31, 1988. But on cross-examination, plaintiff's expert noted that the ensuing years had brought little change, except for a slightly lower dividend. The court was well aware of the age and quality of the information on which plaintiff's expert based his testimony. Neither the cross-examination nor defendant's own case suggested that the ensuing two years' figures would have yielded a significantly different valuation, based on plaintiff's theory of a willing buyer and seller.

Finally, defendant contends that plaintiff should be estopped from disclaiming a valuation of $128,000 for 2,000 of the total of 4,000 shares of Jamison Door stated in a bank loan application signed jointly by the parties. The record does not indicate the circumstances of the loan application or who suggested the valuation figure, and hence the case for estoppel was weak at best. Estoppel was a question for the court, and its conclusion

on valuation was supported by the record on appeal. See *Brouha v. Postman*, 145 Vt. 449, 453, 491 A.2d 1038, 1040 (1985) (payment of bills without protest did not compel conclusion of waiver; question was for the court, and its findings and conclusions will not be disturbed on appeal unless clearly erroneous).

## II. Property Division

Defendant argues that even accepting the court's valuation, the property distribution was inequitable, since plaintiff received marital assets valued at $141,000, while defendant's share was only $43,170, resulting in a 77% to 23% allocation in plaintiff's favor. He argues that in the absence of a finding of fault, the division should more closely approximate 50%-50%. But we have never imposed a hard-and-fast rule of equal division, even in the absence of fault. See *Lynch v. Lynch*, 147 Vt. 574, 576, 522 A.2d 234, 235 (1987); *Roberts v. Roberts*, 146 Vt. 498, 499, 505 A.2d 676, 677 (1986). Although the court cannot leave the basis for its decision to speculation, *Gustin v. Gustin*, 148 Vt. 563, 565, 536 A.2d 933, 935 (1987), we will uphold the decision where the findings reasonably support the judgment. *Bonanno v. Bonanno*, 148 Vt. 248, 251, 531 A.2d 602, 603 (1987). Defendant's reliance on *Sullivan v. Sullivan*, 147 Vt. 407, 408, 518 A.2d 33, 33–34 (1986), is misplaced. In that case the court "made no finding as to the value of the stock or the business," *id.*, although the business produced income for the family of between $13,000 and $15,000 per year. We held that without the value of the stock, we could not review the property disposition.

In the present case the findings on valuation are detailed and clear. In addition, defendant ignores other statutory factors, particularly § 751(b)(10), which allows the court to consider the party through whom the property was acquired, and (b)(11), which sanctions consideration of "the contribution of each spouse in the acquisition, preservation, and depreciation or appreciation in value of the respective estates." The court clearly considered the source of the Jamison Door stock, plaintiff's family, and the fact that defendant benefitted materially from plaintiff's ownership of the stock, while not contributing to enhancing its value. Cf. *Daitchman v. Daitchman*, 145 Vt. 145, 151, 483 A.2d 270, 274 (1984) ("[I]f it chose to do so, the

trial court could have given recognition to the fact that the size of the plaintiff's inheritance was undoubtedly enhanced by defendant's managerial skills."). In addition, defendant was awarded the marital home, the only substantial asset acquired jointly during the marriage.

Finally, defendant faults the trial court for its order with respect to various debts of the parties. The court in its findings fully described the nature of each debt and which party was responsible for payment. The court further found "that the amount expended by each party for antecedent debt offsets the amount expended by the other party." In its order, the court concluded that no adjustment to the parties' division of debt was appropriate. The court's findings amply support its conclusion. There was no error.

*Affirmed.*