682 So.2d 1140 (1996)
Frank M. APPLEBY, Lois W. Appleby, Allan E. Scott, Judith V. Scott, Herbert R. Keith, Robert P. Kelly, Margaret Kelly, Caroline H. Royster, and 879983 Ontario, Ltd., Appellants.
v.
David C. NOLTE, as Property Appraiser for Indian River County, Florida; Karl Zimmermann, as Tax Collector for Indian River County, Florida; L.H. Fuchs, Executive Director of the Department of Revenue of the State of Florida; and Robert F. Milligan, Comptroller of the State of Florida, Appellees.
No. 95-3844.
District Court of Appeal of Florida, Fourth District.
October 9, 1996.
Rehearing and Rehearing Denied November 26, 1996.
Michael O'Haire of O'Haire, Quinn & Candler, Chartered, Vero Beach, for appellants.
Eric C. Barkett of Jackson & Barkett, Vero Beach, for Appellee-David C. Nolte, Property Appraiser for Indian River County.
Robert A. Butterworth, Attorney General, and Mark T. Aliff, Assistant Attorney General, Tallahassee, for Appellees-L.H. Fuchs, Executive Director of the Department of Revenue, and Robert F. Milligan, Comptroller of the State of Florida.
Rehearing and Rehearing en Banc Denied November 26, 1996.
PER CURIAM.
We reverse the final judgment entered in favor of the Indian River County Property Appraiser and remand with direction to enter final judgment consistent herewith.
Appellants are contesting the assessed value of their homes for ad valorem tax purposes. They are all residents of John's Island, equity members of the John's Island Club (Club), a Florida corporation which operates a country club associated with the residential development. Appellants all had equity memberships that entitled them to full golf privileges and, like all other equity members with lesser use privileges, upon dissolution of the Club, they would receive their proportionate share of all of the property and assets, after payment of its debts. The Club limits its membership to a total of 1382: 1125 golf memberships and 257 non-golf memberships called Sport Specials. The full golf memberships are scarce.
Appellee/property appraiser took into consideration appellants' membership status in the Club when appraising the value of their property. Homes or condominiums owned by people who were members with full golf privileges were assessed at values approximately forty percent higher than homes *1141 owned by persons with the sport special memberships, or by persons who were not members at all. The property appraiser began this practice when it became evident that when homes were sold in John's Island, homeowners with full golf memberships who were willing to relinquish their membership to make room for the buyer were able to sell their homes much more quickly and at substantially higher prices than homeowners who had the Sport Special or no membership to relinquish. Appellants argue that increasing the assessed value on their homes based on their personal golf memberships is an inappropriate ad valorem tax on intangible personal property. The trial court disagreed, concluding that "[t]he right associated with each of these six properties to be considered for a golf membership in The John's Island Club is part of the value of the real property owned by plaintiffs," and reasoning, "[t]he fact that a particular piece of property has associated with it the ability to be considered for golf membership in The John's Island Club adds value to that property which is reflected in the sales price of that property."
The Club's official name is "John's Island Club, Inc.," a non-profit Florida corporation; therefore, it is composed of "members" in place of shareholders.
Persons who close on the purchase of a residential unit in John's Island will have an opportunity to acquire an equity membership in the Club, if an equity membership is then available. Equity membership requires an equity contribution, $85,000 in 1994, and approval by the Board of Directors. An "approved" candidate receives a Membership Certificate, which is not transferable unless the member dies or divorces, and then only if the successor to the certificate is approved by the board.
The Club will be obligated to repurchase an Equity Membership only if an individual, who is acceptable to the Club, is willing to acquire the retiring member's membership. Owner-members may arrange through the Club for the reissue of a membership certificate to the buyer of the member's residential unit or lot in John's Island, if the buyer has been approved for membership in the Club. The ability to designate which applicant shall be given priority for the resigned membership, combined with the demand for full golf memberships is what led to higher sales prices for properties owned by golf members willing to resign. The standard contract for sale used in sales of properties in John's Island frequently includes the following clause:
This Contract for Sale and Purchase is contingent upon Buyers becoming a Member of the John's Island Club and acquiring a GOLF Membership in the John's Island Club and same being made available at closing. Neither the price of such Membership nor dues or assessments relating to it, nor prorations thereof, are included in the purchase price of the property and Buyer's obligation for such amounts shall be made subject to separate settlement at time of closing.
This clause assures that the buyer will not have to purchase in the absence of approval for membership in the Club. Similarly, the seller will not have to sell without getting back the equity share in the Club.
The record indicates that golf memberships were owned by both residents and non-residents of John's Island. Resident owners could, and did, sell their properties in John's Island, while retaining their golf memberships. Members could retire their membership without selling their property in John's Island. Persons buying residential units in John's Island from owners who did not have golf memberships could nevertheless acquire a golf membership if one was available and they were approved.
The parties agree that when two similar homes in John's Island are listed for sale, and the owners of one home are golf members of the Club, willing to resign their membership, and the owners of the second home are not golf members, the sale price on the home owned by members will be substantially higher.
The Florida Constitution prohibits counties from levying ad valorem taxes on intangible personal property. Art. VII, § 9(a), Fla. Const. Counties may levy ad valorem taxes on real property and tangible *1142 personal property. Tangible personal property consists of goods, chattels, and other articles of value capable of manual possession and whose chief value is intrinsic to the article itself. § 192.001(11)(d), Fla. Stat. (1993). Neither party argues that appellant's "ability to resign their membership coupled with the right to arrange for a buyer of their property to purchase it" is tangible personal property. Appellants argue that their interest is intangible personal property, not subject to ad valorem taxation. Appellee argues that appellants' interest is real property that is subject to ad valorem taxation.
Section 192.001(11), Florida Statutes (1993), states:
"Personal property," for the purposes of ad valorem taxation, shall be divided into four categories as follows:
....
(b) "Intangible personal property" means money, all evidences of debt owed to the taxpayer, all evidences of ownership in a corporation or other business organization having multiple owners, and all other forms of property where value is based upon that which the property represents rather than its own intrinsic value.
(Emphasis added). The "Membership Certificates" fit the above definition in deciding whether the constitutional proscription applies.
Appellee bases his assessments on a list that indicates which owners in John's Island hold membership certificates entitling them to full golf privileges, and which do not. Properties owned by golf members were being assessed approximately forty percent higher than those owned by non-golf members. Appellee has based his assessment partially on the value of the real property, and partially on evidence of ownership in a corporation, contrary to article 7, section 9 of the Florida Constitution, which prohibits counties from levying an ad valorem tax on intangible personal property. Accordingly, an ad valorem tax may not be based on appellant's ownership interest in John's Island Club, Inc.
Furthermore, appellee's assessments are based on who owns the property. If a golf member owns a residential unit, the assessment is one amount. If a non-golf member owns the same residential unit, the assessment is a lower amount. The Florida Supreme Court has held that ownership in one party or another is not a valid criterion for valuing property. Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973).
GLICKSTEIN and STEVENSON, JJ., and BROWN, LUCY C., Associate Judge, concur.