■ In the Matter of GREEK PEAK, INC., Appellant-Respondent, v HAROLD A. ARMSTRONG et al., Respondents-Appellants. (Proceeding No. 1.) In the Matter of GREEK PEAK, INC., Appellant-Respondent, v LEE BREWER et al., Respondents-Appellants. (Proceeding No. 2.) [697 NYS2d 375] —Graffeo, J. Cross appeals from an order and judgment of the Supreme Court (O'Brien, III, J.), entered March 31, 1998 in Cortland County, which, inter alia, determined the fair value of a share of common stock of petitioner.

Petitioner, the operator of a ski resort, merged ownership with Virgil Recreation Corporation on November 12, 1981 after approval by petitioner's shareholders. Under the terms of the merger, petitioner's minority shareholders owning less than 250,000 shares were required to surrender their shares in exchange for a cash payment at the rate of 13 cents per share.* When respondents, who were minority shareholders, objected to this stock payment plan, they were advised that declination of the offer would result in the fair value of the shares being determined by judicial proceedings.

In December 1981, petitioner commenced this appraisal proceeding pursuant to Business Corporation Law § 623 to ascertain the value of the shares. The dissenting shareholders commenced a separate action in January 1982 against petitioner challenging the legality of the merger. After their unsuccessful attempt to prevent or annul the merger (*see, Beard v Ames*, 126 AD2d 996, *appeal dismissed* 69 NY2d 1037, *appeal denied* 70 NY2d 606), the proceedings in this action, which had been held in abeyance pending the outcome of the merger challenge, were eventually conducted in December 1994. At the conclusion of the trial, Supreme Court established a fair value of $1.10 per share of stock. Petitioner now appeals and respondents cross-appeal from the order and judgment.

During trial, petitioner's expert, William Edwards, a vice-president and director of Arthur D. Little Company, testified that based on the net asset value method of stock evaluation, the shares in question had a negative or zero value on the date of the merger because petitioner's liabilities exceeded its assets. He also reached the same conclusion employing the investment value method, which was based on a determination of the corporation's earning power.

In contrast, respondent's expert, Paul Grier, an associate professor of finance and economics at the State University of New York at Binghamton, opined that the discounted cash flow approach, with its emphasis on future earnings, was the preferable means to value petitioner's stock, claiming that the market value, net asset value and investment value methods were inadequate to value the stock of this corporation due to the lack of comparable transactions and because the value of the company's real estate and machinery was not properly reflected in its book value. Using his preferred method, Grier assigned a value of $1.95 per share for petitioner's common stock. Since

---

* A group of five shareholders owned 78% of petitioner's shares, each of whom owned more than 250,000 shares. The remainder of the shareholders, who numbered in excess of 400, were required to relinquish their shares.

Grier's initial fair value determination depended, in part, on a financial report which was not admitted into evidence, he revised his calculations and testified that the stock was worth a minimum of $1.10 per share. Supreme Court rejected Edwards' testimony and found Grier's analysis to be more credible and comprehensive, particularly in light of the corporation's real estate assets. Accordingly, the fair value of petitioner's common stock was determined by the court to be $1.10 per share.

Business Corporation Law § 623 (h) (4) currently permits the subsequent economic impact of the merger to be considered in the process of stock appraisal to determine the intrinsic value of the shareholders' interest in the corporation (*see, Matter of Friedman v Beway Realty Corp.*, 87 NY2d 161, 167-168). However, prior to the enactment of the 1982 amendment to Business Corporation Law § 623 (h) (4), the fiscal consequences of a merger were expressly prohibited as a component in stock valuation (L 1982, ch 202, §§ 9, 12). Although Supreme Court, as the trier of fact, was entitled to reject Edwards' testimony (*see, Matter of Funplex*, 252 AD2d 923), the record reveals that Grier's valuation was based, to some extent, on an appreciation in value resulting from the merger itself. Such a consideration was inappropriate under the governing statutory provisions since the corporate merger occurred prior to the effective date of the statutory amendment.

Petitioner also contends that Supreme Court erred as a matter of law because it failed to take into account a discount to reflect the lack of marketability of the corporate stock in its calculation of value. In valuing the shares of a private or close corporation, a discount for unmarketability should be applied "because those shares cannot readily be sold on a public market" (*Matter of Seagroatt Floral Co. [Riccardi]*, 167 AD2d 586, 588, *mod* 78 NY2d 439; *see, Ellis v Ellis*, 235 AD2d 1002). Although the court indicated that it considered marketability, the record does not support a finding that such a discount was applied. The reduction in stock value from $1.95 to $1.10 during the course of Grier's testimony was not attributed, in whole or in part, to a lack of marketability discount, but rather was an adjustment in valuation calculations after a particular report was excluded from evidence.

In the absence of articulation of the unmarketability discount applied in the assessment of value of petitioner's stock and in light of the valuation accepted by Supreme Court which took into consideration the affect of the merger, this matter must be remitted to Supreme Court for further proceedings to determine the fair value of the stock.

Mercure, J. P., Crew III, Peters and Carpinello, JJ., concur. Ordered that the order and judgment is modified, on the law, without costs, by reversing so much thereof as determined the fair value of the common stock as of October 15, 1981; matter remitted to the Supreme Court for a new trial on said issue consistent with this Court's decision; and, as so modified, affirmed.