2005 VT 107

# William S. Barrett v. Town of Warren

[892 A.2d 152]

No. 03-545

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.),**
**Specially Assigned**

Opinion Filed September 16, 2005
Motion for Reargument Denied November 3, 2005

*William S. Barrett,* Pro Se, Warren, Plaintiff-Appellee.

*Glenn C. Howland* of *McKee, Giuliani & Cleveland, P.C.,*
Montpelier, for Defendant-Appellant.

¶ 1. **Reiber, J.** The Town of Warren appeals a decision by the state
appraiser reducing the listed value of taxpayer William Barrett's
condominium from its fair market value of $36,000 to $24,000 to reflect
a deduction for "intangible assets" worth $12,000. We reverse.

¶ 2. Taxpayer owns a condominium in the Bridges Condominium
Complex (Bridges), a group of 100 units whose owners are members of
the Bridges Owners' Association, Inc. The town listers entered the

condominium in the Warren grand list for 2002 at a value of $36,000. This value was based on a town-wide reappraisal, adjusted to reflect the unit's condition and recent sales of comparable units at the Bridges. Taxpayer appealed to the Warren Board of Listers, requesting that the listed value be reduced by $12,877.23 to reflect his share of the Association's intangible assets, which he argued should not be subject to taxation as real property. The Board denied the appeal. Taxpayer then appealed to the Warren Board of Civil Authority (BCA) on substantially the same grounds. 32 V.S.A. § 4404. The BCA denied taxpayer's appeal, finding that the listers properly relied on comparable sales in establishing an estimated fair market value for his property. Taxpayer then appealed to the state appraiser pursuant to 32 V.S.A. § 4461(a). The state appraiser conducted a de novo proceeding to determine the correct value of the property. 32 V.S.A. § 4467.

¶ 3. The state appraiser lowered the listed value from the property's fair market value of $36,000 to an "assessment value" of $24,000. The appraiser's decision to list taxpayer's condominium unit at less than fair market value was based on a finding that ownership of the property included an "intangible asset of $12,000 for the subject property." The appraiser concluded that this amount represented the value of taxpayer's .88% interest in the assets of the Association, which had a total value of approximately $1,446,880 as of September 30, 2001, including over $1,000,000 in cash.

¶ 4. The Town of Warren contends that the state appraiser erred in setting the "assessment value" of taxpayer's property substantially lower than its fair market value to reflect a deduction for taxpayer's equity in the Association. Taxpayer argues that his equity in the Association is an intangible asset and therefore not subject to property tax, though he concedes that it contributes to the fair market value of his property. We reverse because the Town has met its burden of production, while taxpayer has failed to met his burden of persuasion. The Town complied with the plain language of 32 V.S.A. § 3481 by listing the value of taxpayer's property at its fair market value. Taxpayer provided no evidence that the valuation was arbitrary or unlawful, and his proposed valuation method has no legal support. The statute does not recognize adjusting the fair market value by the amount of a taxpayer's interest in a condominium owners association. The state appraiser's use of a nonstatutory deduction from fair market value violates the statute's plain language. We therefore reverse.

¶ 5. This Court reviews decisions by the state appraiser to ensure that they are supported by findings rationally drawn from the

evidence and are based on a correct interpretation of the law. *Allen v. Town of West Windsor*, 2004 VT 51, ¶ 4, 177 Vt. 1, 852 A.2d 627. We will not disturb a fair market value determination unless an error of law exists. *Kachadorian v. Town of Woodstock*, 149 Vt. 446, 448-49, 545 A.2d 509, 511 (1988). Absent compelling indication of error, interpretations of statutory provisions by the agency responsible for their administration will be sustained on appeal. *In re Vt. Health Serv. Corp.*, 144 Vt. 617, 622-23, 482 A.2d 294, 297 (1984).

¶ 6. The property taxation statute requires the listed value of real property to be equal to its appraisal value, which in turn must reflect its estimated fair market value. 32 V.S.A. § 3481(1)-(2).[1] In accord with the plain language of § 3481, we have held that "[t]he touchstone for property tax valuations is fair market value ...." *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 567, 556 A.2d 64, 66 (1988); see also *Royal Parke Corp. v. Town of Essex*, 145 Vt. 376, 378, 488 A.2d 766, 767-68 (1985) ("[Section 3481] makes fair market value the standard for appraisal."). Fair market value is "the price which the property will bring in the market when offered for sale and purchased by another." 32 V.S.A. § 3481(1). There are several methods of estimating fair market value, one of which is sales of comparable properties "between a willing buyer and seller at arms length." *Barrett/Canfield, LLC v. City of Rutland*, 171 Vt. 196, 199, 762 A.2d 823, 825 (2000). We have characterized the use of such sales as "the most persuasive method of appraising residential property in Vermont," *Sondergeld*, 150 Vt. at 567, 556 A.2d at 66, although other methods are also acceptable. See *Lake Morey Inn Golf Resort v. Town of Fairlee*, 167 Vt. 245, 250, 704 A.2d 785, 788 (1997) (combination of market data approach and cost approach held consistent with statutory requirements for determining fair market value); *Town of Barnet v. Cent. Vt. Pub. Serv. Corp.*, 131 Vt. 578, 580-81, 313 A.2d 392, 393 (1973) (appraisers may use approaches including reproduction cost, earning power, construction cost less depreciation, "or the like" to determine fair market value). The fair market value, arrived at by any of these methods, takes into account all the elements of the property's availability, "its use, potential or

---

[1] 32 V.S.A. § 3481(2) requires that the listed value of property be equal to 100% of its appraisal value, but we have acknowledged that precise equivalence is not necessary so long as all properties in a given town are listed at the same percentage of appraisal value. Allen, 2004 VT 51, ¶ 2. Section 3481(1) also permits a "use value appraisal" and, therefore, a listed value below fair market value for properties enrolled in the current use program, 32 V.S.A. §§ 3751-3763, which taxpayer's condominium is not.

prospective, and all other elements ... which combine to give property a market value." *Town of Barnet v. New England Power Co.*, 130 Vt. 407, 411, 296 A.2d 228, 231 (1972).

¶ 7. The Town had the initial burden of production with respect to fair market value. *Sondergeld*, 150 Vt. at 567, 556 A.2d at 66. The Town met this burden by producing evidence of fair market value based on the average record sales prices of the Bridges. This is an acceptable valuation method that taxpayer does not dispute. See *id.* (concluding that town met burden of production by producing evidence of fair market value). Here, the Town and taxpayer agreed that the fair market value of the property is $36,000.

¶ 8. Because the Town met its burden of production, taxpayer retained the burden of persuasion as to contested issues. *Id.* at 568, 556 A.2d at 66. "The burden of proof is not met by simply impugning the Board's methods or questioning its understanding of assessment theory or technique." *Id.* Instead, "[t]o prevail a taxpayer must show an arbitrary or unlawful valuation." *Id.* Taxpayer argues that the Town may not tax his interest in the Association because it is intangible personalty, and that he is entitled to a dollar-for-dollar reduction of his share of association fees from the $36,000. Taxpayer relies on the Association's balance sheets to support his argument. The balance sheets, however, prove only what his share was at the time the balance sheet was prepared. The sheets do not provide any support for his main argument that his interest in the Association has influenced the fair market value to the extent of $12,000. Taxpayer's speculation "may or may not state a generally true principle in Vermont, but it is no substitute for evidence in a specific case." *Id.*

¶ 9. Nor does taxpayer show an arbitrary or unlawful valuation. In fact, his theory of valuation has no support in the law. The intangible personalty taxpayer refers to, as the leading case in California put it, "cannot be separately taxed as property [but] may be *reflected* in the valuation of taxable property." *Roehm v. Orange County*, 196 P.2d 550, 554 (Cal. 1948) (emphasis added); see also *Mola Dev. Corp. v. Orange County*, 95 Cal. Rptr. 2d 546, 557 (Ct. App. 2000) (citing *Roehm* with approval); *American Sheds, Inc. v. County of Los Angeles*, 78 Cal. Rptr. 2d 58, 62-63 (Ct. App. 1998) (citing *Roehm* and stating that "intangibles associated with the realty, such as zoning, permits, and licenses, are not real property and may not be taxed as such. However, insofar as such intangibles affect the real property's value ... they may properly contribute to an assessment of fair market value."). This is all that has happened here. Were we to adopt taxpayer's position, and

require the Town to sever the value of an interest in the Association from the value of "the real-estate component" of a condominium unit, it would be difficult to assign a valuation method that could reliably discern the membership's value.

¶ 10. The difficulty of taxpayer's approach is evident in the state appraiser's decision. The appraiser valued taxpayer's ownership interest in the Association by simply calculating his .88% share of the Association's total equity, failing to account for the fact that the Association membership imposes liabilities on taxpayer and any successor in interest, such as the obligation to pay monthly fees. Taxpayer considers these fees excessive and concedes that they probably *detract* from the fair market value of the unit. Nothing indicates that the appraiser's valuation method arrives at an accurate value for the interest in question. Even were the method accurate, such an adjustment is not recognized by § 3481.

¶ 11. All of the elements, tangible and intangible, that combine to give real property fair market value are subject to property tax. 32 V.S.A. § 3481(1). For example, long-term leases appurtenant to real estate are subject to property tax, insofar as they affect the fair market value of real property. *City & County of Denver v. Bd. of Assessment Appeals*, 848 P.2d 355, 362 (Colo. 1993); see also *Ry. Exp. Agency, Inc. v. Virginia*, 358 U.S. 434, 442 (1959) ("No one denies the right of the State, when assessing tangible property, to ... give effect to the intangible factors which influence real values."). The key inquiry is whether those intangible factors are so "intimately intertwined" with the real property that the property would not function without them. See *In re Town of Plymouth*, 479 A.2d 1388, 1390 (N.H. 1984) (holding that ski passes, furnishings, and prepaid cleaning charges, not appurtenant to the condominium, "are not specialized intrinsic features which make the condominium in question function as a condominium"); see also *Appleby v. Nolte*, 682 So. 2d 1140, 1141-42 (Fla. Dist. Ct. App. 1996) (holding that country club memberships, held by some residents and some nonresidents, and which were not prerequisites of residence, were not subject to property tax because they were personal property).

¶ 12. Taxpayer's membership in the Association, as he concedes, would necessarily be conveyed to any purchaser of his condominium unit. The membership is a prerequisite of ownership at the Bridges, and is necessary to make the condominium function as a condominium. In all of these respects it is "intimately intertwined" with ownership of a unit. In fact, it is more than that; it is a quality of ownership of a unit in this complex, unique to owners of such units. Funds are drawn from

the Association accounts for "common expenses" necessary to maintain the condominium common areas. Those funds are not accessible for personal or individually-determined uses according to the Association's governing documents, which incorporate by reference the Vermont Condominium Ownership Act. 27 V.S.A. §§ 1301-1329. Accordingly, the interest in the Association is transferable only along with ownership of a unit.

■ ¶ 13. Taxpayer's interest in the Association is therefore substantially different from the country club memberships in *Appleby* and the ski passes and furnishings in *Town of Plymouth*. The disputed property in those cases was not appurtenant to real property, nor did it constitute "intrinsic features which make the condominium in question function as a condominium." *Town of Plymouth*, 479 A.2d at 1390. The Association membership, in contrast, is an intrinsic feature of the condominium unit that permits the condominium complex to function as a whole. For example, the entire complex is benefited by regular upkeep of the common areas, and a cash reserve is necessary to discharge such obligations. The ownership interest in the Association positively influences the price a buyer is willing to pay for a unit in the Bridges. Therefore, the value of that interest may properly be taken into account when determining the real property's fair market value.

¶ 14. There are limited situations in which the state appraiser may, consistent with the statute, disregard a sale and turn to other evidence of fair market value. These situations arise when "some evidence undermines the bona fide nature of the sale" by showing that either the buyer or seller was compelled to participate, or that the sale was not at arms length. *Barrett/Canfield*, 171 Vt. at 199, 762 A.2d at 825; see also *Beach Props., Inc. v. Town of Ferrisburg*, 161 Vt. 368, 375-76, 640 A.2d 50, 54 (1994) (sale between family members does not reflect fair market value); *Vt. Nat'l Bank v. Leninski*, 166 Vt. 577, 579, 687 A.2d 890, 892 (1996) (mem.) (price paid at auction following foreclosure does not reliably indicate fair market value). Taxpayer has produced no evidence to indicate that the sales relied upon by the listers and the BCA were not bona fide. To the contrary, they were precisely the sort of arms-length sales by which "a market value is perforce established for appraisal purposes." *Royal Parke*, 145 Vt. at 379, 488 A.2d at 768. Indeed, both the appraiser and taxpayer concede that those sales established the fair market value of the property.

■ ¶ 15. Because the Town has met its burden of production and taxpayer has failed to show an arbitrary or unlawful valuation, we

reverse the state appraiser's decision setting taxpayer's property in the Warren Grand List at less than its fair market value because it is contrary to the plain language of 32 V.S.A. § 3481 and § 4467.

*Reversed.*

¶ 16. **Dooley, J.**, dissenting. The majority has reversed an overly simplistic decision of the state appraiser that is unfair to the Town and substituted an overly simplistic decision that is unfair to taxpayer. The right answer lies between the two extremes and ensures that all the real property at the Bridges, whether owned by the condominium owners or the Bridges Owners Association, Inc., is taxed once and at fair market value, and that no personal property, however owned, is taxed at all. The majority's decision causes double taxation and ensures that personal property of significant value will be taxed as real property, increasing the amount collected by the Town above what the law allows. Because of that unfair result, I dissent from the majority opinion and result. Although I would reverse the appraiser's decision, I would remand for a proper determination of listed value.

¶ 17. We must start with the acknowledgment that this is an unusual case. The Bridges includes 100 condominium units. If taxpayer's unit is of average value at $36,000, the whole complex is worth around $3.6 million dollars. According to its balance sheet, the Association is worth almost $2 million. None of that value includes the common areas or facilities, which are owned in common by the unit owners. According to the majority decision, the value of the Association is reflected in the assessed valuation of all the units. Under that theory, a unit owner's interest in the Association could be more valuable than his interest in the unit and common areas and facilities. Because of these unusual facts, I do not believe that it could ever be considered a fair approximation of reality that the value of an owner's interest in the Association is somehow buried in his unit values. In slang terms we are dealing with a large tail wagging a smaller dog.

¶ 18. The central thesis of the majority's decision is its statement in ¶ 4:

> The Town complied with the plain language of 32 V.S.A. § 3481 by listing the value of taxpayer's property at its fair market value. Taxpayer provided no evidence that the valuation was arbitrary or unlawful, and his proposed valuation method has no legal support. The statute does not recognize adjusting the fair market value by the amount of a taxpayer's interest in a condominium owners association. The state ap-

praiser's use of a nonstatutory deduction from fair market value violates the statute's plain language.

By this statement, the majority accepts the Town's argument that this is a dispute about the value of property. In fact, the statement is wrong; this is a dispute about what property the Town can value and tax. When the correct issue is addressed, the answer is different and more complex than the majority acknowledges.

¶ 19. Although the specific facts of this case are sketchy, the key facts are reasonably clear. Taxpayer owns a condominium unit, along with an undivided interest in the common areas and facilities. 27 V.S.A. § 1306(a); *Fox v. Kings Grant Maintenance Ass'n*, 770 A.2d 707, 713 (N.J. 2001) ("[W]hen an individual purchases a condominium unit, he or she simultaneously acquires a proportionate undivided interest in the community's common elements."). Both the unit and the interest in the common areas and facilities are real property. 27 V.S.A. § 1304.

¶ 20. In addition, taxpayer owns an interest in the Association, the incorporated condominium association. Exactly how this interest is manifested — for example, by a share of stock or a membership certificate — is not shown by the record. Although neither the record nor the law so states, I think the majority is correct that taxpayer's "membership in the Association . . . would necessarily be conveyed to any purchaser of his condominium unit" and "membership is a prerequisite of ownership at the Bridges." The Association manages the 100 condominiums in the complex. Some of the units are owned by the Association, and it conducts a condominium rental business on behalf of itself and unit owners. It receives income from annual assessments on unit owners and from its rental business. At the time of the property tax valuation by the Town, the Association had a "membership equity" of approximately $2,000,000, of which most of the assets were cash.

¶ 21. Two types of property are central to this case.[2] The first type of property is the unit owner's interest in his unit and the common area and facilities, which is by law real property. 27 V.S.A. § 1304. The second type of property is the unit owner's interest in the condominium association. That ownership interest, however it is physically repre-

---

[2] In somewhat of a misdirection, taxpayer set up two types of property — tangible and intangible — and argues about the Town's treatment of the latter. Whatever is the intended distinction, it is not one contained in property law. Indeed, as reflected in the state appraiser and majority decisions, the property types set up by taxpayer lead to more confusion than clarity in this case.

sented, is not real property, but is instead personal property. See *Magoon v. Bd. of Civil Authority of Johnson*, 140 Vt. 612, 614, 442 A.2d 1276, 1276-77 (1982) ("Real estate within the meaning of the tax law is land with its fixtures and accessories measurable and capable of description by metes and bounds."). Indeed, if we look at the assets of the condominium association, most of those assets are personal property.

¶ 22. The two types of property are significant. As a general rule, under the Vermont property tax system real property is taxable and personal property is not.[3] See *Knollwood Bldg. Condos. v. Town of Rutland*, 166 Vt. 529, 536, 699 A.2d 31, 36 (1997). Thus, a condominium unit and its associated common areas and facilities are taxable, while a share of stock or a membership certificate is not. Indeed, apart from its status as personal property, another strong reason exists as to why the physical manifestation of corporate ownership is not taxable. The assets of the corporation, to the extent those assets are taxable, are taxable to the corporation. Thus, a corporation will pay real property taxes on real property it owns. To also tax the stock owner on that same property would result in double property taxation.

¶ 23. The state appraiser's decision was that the value of taxpayer's real property interest plus his interest in the Association was $36,000. He derived this figure from recent sales of units at The Bridges — sales that necessarily included interests in the Association. He held, however, that over $12,000 of the total fair market value represented the interest in the Association, an item of personal property. See J. Eckert, Property Appraisal and Assessment Administration 138 (1990) ("[T]he value of the personal property must be estimated and subtracted from the sale price to determine the price paid for the real property alone."); see also *In re Town of Plymouth*, 479 A.2d 1388, 1390 (N.H. 1984) (deducting value of ski passes, furnishings and prepaid cleaning charges from real property value of condominium); *People ex rel. Hotel Paramount Corp. v. Chambers*, 83 N.E.2d 839, 840 (N.Y. 1949) (excluding comparative sale where sale price included not only real property, but "worth of such additional elements as management, good will, hotel furniture and furnishings, inventory of food and beverages and the usual hotel services"). Thus, the appraiser reasoned

---

[3] By local option, a town can impose a tax on certain business personal property. See 32 V.S.A. § 3849. The testimony of the representative of the Town was that the Town taxes only real property.

that taxpayer's taxable portion — the value of the unit and common area and facilities alone — was $24,000.

¶ 24. Thus, I return to my point about the misconstrued issue in this case; this case is not about whether property was assessed at less than fair market value. While one can criticize the state appraiser's decision, the fault in the assessment is not that the state appraiser assessed taxable real property at less than fair market value or that he violated 32 V.S.A. § 3481(1), as the majority finds in ¶¶ 3 through 6 of its opinion and thereafter. The state appraiser decided that some of the property in issue is nontaxable. The proper questions on appeal, therefore, are whether he is right that some of the property is nontaxable and, if so, whether he has found the correct amount.

¶ 25. The majority answers that all the property is taxable and it is all real property — that is, that the only property to be valued is the unit and the common areas and facilities associated with the unit. In the majority's view, the interest in the Association is accounted for "when determining the real property's fair market value." The majority bases this determination on its conclusion that the real property and the interest in the Association are intertwined. Under the majority's analysis, because the two must be sold together with one combined value, and because it is up to the state appraiser and this Court to determine how to allocate that value, we have the power to allocate all value to the real property.

¶ 26. We also have the obligation to reach a fair result. As I said above, in this unusual case, the majority's result is very unfair to taxpayer. The majority's position could be that all of the assets of the Association are taxable to the unit owners as real property. The result is a conversion of at least $1.4 million in personal property into real property so it can be taxed to all the unit owners. According to its balance sheet, the Association also holds real property assets of at least $300,000. The Association will pay the Town property taxes on these assets. The unit owners will also indirectly pay property taxes on these assets because the value of their condominium units will be inflated by the value of the Association's assets. Under the majority's result the Town receives a large property tax windfall.

¶ 27. The majority has four reasons why it imposes this unfair result: (1) § 3481 requires it; (2) Association funds are not available to unit owners; (3) taxpayer's interest in the Association cannot be valued; and (4) taxpayer failed to meet his burden of persuasion after the Town met its burden of production. Because the majority has reiterated that the appraiser's decision violates § 3481, I will reiterate that it does not.

Section 3481(1), a definition section, simply states that appraised value is equal to fair market value.[4] If the property to be appraised were only the condominium unit and its associated common areas and facilities, the majority would be correct. But the property to be valued here is the condominium unit, the associated common areas and facilities, *and the unit's interest in the Association.* The majority states that the Association interest is "intimately intertwined" with the ownership of the unit without acknowledging that this reality is a two-edged sword. *Ante,* ¶ 12. The majority concentrates on this close relationship to value the two interests together, but the edge the majority ignores is that one interest is an item of personal property, the value of which must be accounted for. Nothing in § 3481 tells us to assign a value of zero to the interest in the Association and all the value to the real property. The majority has done that for its own reasons unconnected to § 3481.

¶ 28. Second, the majority's position that the Association's funds are not available to the unit owners is wrong as a matter of law.[5] It is important to understand that the Association's funds come from two sources. One source is the business activities of the Association in renting units, including units it owns. Nothing in the law prevents a corporation from distributing profits to its shareholders; that is the purpose of the corporation. Even if the Association's only purpose were to maintain the common areas and facilities, as the majority appears to believe, its availability position would be wrong. Nothing in the statute or the condominium declaration in this case prohibits the Association from distributing assessment funds back to its members. Indeed, the condominium law authorizes that "[a]nnually" common profits be distributed among the unit owners, 27 V.S.A. § 1310, and broadly

---

[4] In the concluding paragraph and in numerous places before that paragraph, the majority states that the appraiser's decision is contrary to the "plain language" of § 3481. It even adds in the concluding paragraph that the decision is contrary to the plain language of § 4467. The substance of the former section is to require assessment at fair market value, a point about which there is no disagreement. How you get from that language to the conclusion in this case is the exact point of disagreement. Labeling this a "plain language" case is unhelpful, avoiding the issues before us rather than confronting them.

[5] The majority opinion says that this requirement of unavailability can be found in "the Association's governing documents," which incorporate the condominium law. The only "governing document" in the record is the declaration of the Bridges condominium and it contains no mention of the subject. Other than 27 V.S.A. § 1310, which is discussed in the text and authorizes distributions to the membership, the condominium act does not discuss the subject.

defines "common profits" to include all "income, rents, profits and revenues," *id.* § 1302(8). Certainly the assessments the Association receives from the unit owners are "income" and "revenues."

¶ 29. Third, the majority's conclusion that taxpayer's interest in the Association cannot be valued does not comport with our decisions in other areas of the law. See *ante,* ¶ 10. I agree that the valuation is more complex than the state appraiser realized, but this does not mean that valuation is impossible. We have recognized the difficulty of valuing closely held corporations, which resemble the Association in that interests are not freely bought and sold on the open market. *Goodrich v. Goodrich,* 158 Vt. 587, 590, 613 A.2d 203, 205 (1992) (recognizing that valuation of close corporations is difficult and depends on the facts of the case). This difficulty does not mean impossibility, however, and courts have devised ways of ascertaining the value of these entities. See, e.g., *Van Schaack v. Van Schaack Holdings, Ltd.,* 856 P.2d 15, 23 (Colo. Ct. App. 1992) (considering market value, net asset value, and reasonable future use to determine plaintiff's interest in a close corporation); *Greek Peak Inc. v. Armstrong,* 697 N.Y.S.2d 375, 377 (App. Div. 1999) (including a discount for unmarketability in valuing shares of close corporations).

¶ 30. The state appraiser's valuation is overly simplistic because it ignores the fact that taxpayer cannot sell the interest in the Association apart from the condominium unit and cannot immediately access even taxpayer's share of the liquid assets. The appraiser must consider these factors in reaching a value for the Association interest. Moreover, the appraiser's focus on "intangible" property understates the extent to which the Association's assets affect the unit owner's value. On remand, I would give taxpayer and the Town the opportunity to offer evidence going to these questions.

¶ 31. Finally, the majority states an alternative ground for rejecting the appraiser's decision — that taxpayer failed to provide "any support for his main argument that his interest in the Association has influenced the fair market value to the extent of $12,000." I question whether this is a true alternative holding, because the rest of the opinion makes clear that no evidence taxpayer could provide could meet his burden of persuasion where, as a matter of law, the interest in the Association is taxed through the value of the condominium.

¶ 32. Even if this were a true alternative holding, I would disagree with it. As the majority recognizes, our cases require the Town to initially produce evidence of fair market value. *Sondergeld v. Town of Hubbardton,* 150 Vt. 565, 567, 556 A.2d 64, 66 (1988). The Town failed

to meet this burden because the value of all the comparables it put forward as evidence covered both taxable real property and untaxable personal property. Thus, the value of taxpayer's property that it presented included both taxable and untaxable property. By refusing to recognize, acknowledge, and deal with this situation, the Town never offered any evidence of the fair market value of the real property only.

¶ 33. I have a similar view of the majority's statement that "[t]axpayer provided no evidence that the valuation was arbitrary or unlawful." By statute, taxpayer, as owner of the property, may testify to the value of his property. See 12 V.S.A. § 1604. He testified that the combined value of the condominium and the interest in the Association was affected by the value of his interest in the Association, such that the value of the real property alone was less than its sale value, because the sale would include the interest in the Association. Taxpayer offered proof that the valuation was arbitrary or unlawful.

¶ 34. Although I would remand for a new hearing because we should be announcing a new standard for cases like this, I do not agree that the appraiser lacks evidence to make a decision on this record. The state appraiser is an administrative agency. We held in *Breault v. Town of Jericho*, 155 Vt. 565, 567-68, 586 A.2d 1153, 1155 (1991), that the appraiser could make an adjustment to fair market value for "economic obsolescence" of the property as long as the adjustment was within the range of the evidence, and even though there was no specific evidence supporting the extent of the adjustment. Based on *Breault*, we upheld similar adjustments for vacancy rates and administrative expenses to a valuation based on income capitalization in *Woolen Mill Assocs. v. City of Winooski*, 162 Vt. 461, 464, 648 A.2d 860, 863 (1994). As in *Breault*, the range of the evidence is between no adjustment, as claimed by the Town, and a large adjustment, as claimed by taxpayer. The appraiser has the discretion to choose between the extremes considering the factors discussed above.

¶ 35. I am sure that for the vast majority of condominium developments in this state, the issues in this tax appeal are irrelevant. In those cases, the condominium association will only manage the common areas and facilities and will roughly spend its assessment income on an annual basis. It will not own real property, and its value will be small in comparison to the value of the common areas and facilities and the units. The majority has constructed a rule for those cases and applied it to this very different case, where the facts and circumstances require a different result. The majority's one-size-fits-all approach produces an unjust result in this case, and I cannot join it.

¶ 36. I am authorized to state that Chief Justice Allen (Ret.) joins in this dissent.