**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2015-241

OCTOBER TERM, 2015

| | | |
|---|---|---|
| Merle Van Gieson and Linda Van Gieson | } | APPEALED FROM: |
| | } | |
| | } | Property Valuation and Review |
| | } | Division |
| v. | } | |
| | } | |
| Town of Montgomery | } | DOCKET NO. PVR 2014-33 |

In the above-entitled cause, the Clerk will enter:

Taxpayers appeal the 2014 assessment of their real property by the division of property valuation and review. We affirm.

The property in question consists of a principal residence—a one-story modular dwelling built in 1998 containing approximately 1700 square feet—two sheds, a log camp, and a pond on 11.8 acres of land located in the Town of Montgomery. In 2014, pursuant to a town-wide reassessment, the Town assessed taxpayers' property at $270,000. Taxpayers appealed to the board of civil authority, which reduced the assessment to $267,000. Taxpayers appealed that assessment to the director of the division of property valuation and review, who assigned a hearing officer to the case.

At the hearing, the Town offered four comparable properties for comparison,[1] and taxpayers offered five of their own. Following a site visit and hearing, the hearing officer further reduced the assessment to $245,000. The hearing officer rejected two of the Town's comparables, one because the property was in Cambridge, seventeen miles away, and the other because the Town explained that the property was not actually a "comparable." The hearing officer rejected three of the taxpayers' comparables—two because the homes were over one hundred years old, while taxpayers' was only sixteen, and one because taxpayers acknowledged it was not a good comparable. The hearing officer thus relied on the two properties identified as comparable sales by both parties. Although the parties both offered these two sales as comparable, they made different adjustments to the sale prices of the respective properties in determining the adjusted sale price of the comparables. The hearing officer likewise made specific adjustments to the sale prices of the two comparables in determining their adjusted sale prices.

On appeal, taxpayers make several arguments. Taxpayers first contend that the hearing officer erred by failing to make findings in denying their motion for reconsideration of its decision. For multiple reasons, we find this argument unavailing. In support of their argument,

---

[1] The Town explained at the hearing that one of these comparables was not actually comparable. The Town included it on its exhibit to show what $236,000 can buy in this market—a property that the Town described as "much less than what the [taxpayers'] property is."

taxpayers cite Vermont Rule of Civil Procedure 52(a), which provides that in actions tried before a court rather than a jury, the court "may" on its own initiative or "shall" upon request of a party within five days of the decision make separate findings and conclusions. V.R.C.P. 52(a)(1). As evidenced by its position in the civil rules, Rule 52(a) is aimed at final decisions by a court, and does not necessarily apply to post-trial orders that do not amend the final decision.

In any event, procedures before hearing officers are governed by the Administrative Procedure Act, 3 V.S.A. § 800 et seq., as well as Chapter 131 of Title 32 and Rule 84.1 of the division of property valuation and review. As with Rule 52(a), findings are required under these statutes and rules with respect to a hearing officer's final decision, but none specifically provide for post-trial motions, let alone require findings in response to such motions. See 3 V.S.A. § 812(a) ("A final decision shall include findings of fact and conclusions of law, separately stated."); 32 V.S.A. § 4467 (providing that on appeal to court or director of division of property valuation and review "[t]he findings and determinations of the hearing officer shall be made in writing and shall be available to the appellant"); Property Valuation and Review Division Rule 84.1, Section 23, http://www.state.vt.us/tax/pdf.word.excel/pvr/rule84-1.pdf [http://perma.cc/FTT2-G49N] (providing that appraiser's "decision shall be in writing, and shall include findings of fact and conclusions of law," and that findings shall include, among other things, "a statement of the facts relied upon to determine th[e] valuation" reached).

Generally, post-trial motions give decisionmakers an opportunity to take corrective action to address mistakes. See State Highway Bd. v. Town of Ludlow, 131 Vt. 510, 515 (1973). Here, taxpayers disputed the hearing officer's decision to reject two of their comparable properties and not to apply a median value to the two comparable properties that it did use. The hearing officer declined to alter its decision, and taxpayers were free to raise on appeal to this Court the claims of error raised in their motion for reconsideration. The hearing officer's failure to include new, additional findings of fact in its denial of taxpayers' motion was not error.

Next, taxpayers argue that the hearing officer committed reversible error by accepting the Town's adjustments for dwelling quality between the subject property and the comparable properties. The main differences between the parties' respective adjusted sale price figures for the two comparables are: (1) they were derived from very different location adjustments; (2) there were differences in the attributions of value to outbuildings; and (3) there were different adjustments for the quality of the construction. With respect to the first two factors, the hearing officer essentially ruled in taxpayers' favor, adjusting the Town's adjusted sale prices for the respective buildings accordingly. After doing that, the hearing officer noted that the Town's adjusted sales prices for the two properties, as revised by the hearing officer, were $240,443 and $247,675. Noting that taxpayers' adjusted sales prices for the same two comparables were $236,800 and $253,900, the hearing officer set the value of the taxpayers' property at $245,000.

Taxpayers argue that the town's adjustments for the quality of construction of the comparables as compared to the taxpayers' property were based on cost tables rather than market data, and that the hearing officer erred in accepting them. The Town reduced the value of one comparable that was of good quality by $10,000, and the value of the other, which was of average to good quality by $5,000, in recognition of the fact that the taxpayers' property was an average quality of construction. The Town drew these figures from the Marshall and Swift cost tables. Taxpayers provided testimony that the proper market-based quality adjustment for those same properties should have been $15,400 and $6,600, respectively.

There are several flaws in the taxpayers' argument.  First, the argument fails to recognize that the final value attributed to taxpayers' property was the midpoint between their own adjusted sales prices for the two comparables relied upon by the hearing officer.  And the hearing officer specifically relied on taxpayers' adjusted sales price figures for these two comparables in reaching its own valuation.  Having elected to proceed on the basis of the two comparables that it chose, the hearing officer valued the taxpayers' property exactly as one would expect based on the taxpayers' own adjusted sales prices.  In addition, even if the hearing officer had revised the Town's adjusted sales prices using the same figure as taxpayers did, the resulting figures would be within one percent of the value the hearing officer assigned to taxpayers' property.

And finally, if we accepted the taxpayers' argument that the Town's quality adjustments were invalid because they were based on cost-related tables, the resulting adjusted sales prices for the comparable properties would actually be higher, not lower than they were, undermining taxpayers' position.  Taxpayers' argument only advances their case if we conclude that in addition to erroneously using the Town's quality adjustments, the hearing officer also erred in failing to use the adjustments advocated by taxpayers.  Mr. Gieson testified, without further explanation, that the figures he used were what he found the market bears.  As the trier of fact, the hearing officer "is under no obligation to accept, interpret, or apply evidence in accordance with the views of either party.  The weight, credibility and persuasive effect of the evidence" is for the factfinder to determine.  Kruse v. Town of Westford, 145 Vt. 368, 374 (1985).  We need not decide whether generally using quality adjustments from the Marshall and Swift cost tables to adjust market sales prices is error.  In this case, the taxpayers' argument on that point, even if accepted, would not lead us to conclude that the hearing officer's ultimate valuation was erroneous.

Taxpayers next argue that the hearing officer erred by not reducing the adjusted sales prices in the Town's sales grid by $2000 to account for the fact that their water supply is from a spring located on abutting property, which is accessible only through a nontransferable right of way.  Taxpayers explicitly abandoned this claim of error in their reply brief, and, in any event, they failed to meet their burden of proving that their water supply source warranted such a reduction.

Taxpayers also argue that the hearing officer erred by failing to issue sufficient findings as to why he rejected two of their comparable properties simply because those properties were well over one hundred years old, in comparison to their sixteen-year-old property.  They point out that many one-hundred-year-old houses in Vermont have been completely renovated such that their condition is equal to or better than newer homes.  Again, we find no basis to disturb the hearing officer's decision.  Once the Town met its burden of production, "taxpayer[s] retained the burden of persuasion as to contested issues."  Barrett v. Town of Warren, 2005 VT 107, ¶ 8, 179 Vt. 134.  Taxpayers cannot meet this burden "by simply impugning the [hearing officer's] methods," but rather "must show an arbitrary or unlawful valuation."  Id. (quotations omitted).  The Town provided testimony during the hearing as to the work needed on one of the older homes, while taxpayers indicated in a post-trial motion that they did not visit the proposed comparable properties.  We agree that one-hundred-year-old homes may be comparable to recently built homes, but it was taxpayers' burden of persuasion on all contested issues, and they failed to produce evidence to meet their burden of demonstrating that these hundred-year-old homes were valid comparable properties to the subject property.

Taxpayers argue further that relying on two comparable properties was insufficient for the hearing officer to make a valid assessment of the subject property.  In so arguing, taxpayers

cite a sampling requirement of appraisal practice established by the International Association of Assessing Officers and a Fannie Mae selling guide. Taxpayers fail to cite any Vermont law, however, setting a minimum number of comparable properties upon which to base an assessment, and we see no reason to do so here. In this case, the Town submitted four, and taxpayers five, comparable properties, but the hearing officer rejected several of them for various reasons. The hearing officer rejected several as not comparable, and relied on only two comparable properties—both of which were submitted by taxpayers and the Town—in reaching its valuation. It did not err as a matter of law in doing so.

Finally, taxpayers argue that the hearing officer erred by not rejecting a comparable property based on the fact that it involved a cash sale. Taxpayers argue that sales involving "other than conventional financing" should not be used as a comparable because the unconventional financing may distort the sale price. Although taxpayers did argue below that a cash sale involves "other than conventional financing" and thus should not be used as a comparable sale, they included the property sold in a cash sale among the comparable sales in their own analysis. To the extent there was any error in the hearing officer accepting this property as comparable, the error was invited. See State v. Longe, 170 Vt. 35, 39 n.* (1999) ("The invited error doctrine, which applies in both civil and criminal cases, is a branch of the doctrine of waiver by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside." (quotation omitted)). Moreover, taxpayers did not provide any evidence that a cash sale, in contrast to, for example, a below-market-interest seller financed sale, would distort the amount a willing buyer would pay a willing seller to sell the property in question. The trial court's reliance on the cash-sale comparable in this case was not error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice