## Royal Parke Corporation v. Town of Essex

[488 A.2d 766]

No. 82-376

Present: Hill, Underwood, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed February 1, 1985

*Vincent A. Paradis*, Essex Junction, for Plaintiff-Appellant.

*Perry & Schmucker*, South Burlington, for Defendant-Appellee.

Barney, C.J. (Ret.), Specially Assigned. This is an appeal from a property reappraisal for local tax assessment purposes. The Royal Parke Corporation, the plaintiff taxpayer, is challenging the decision of the State Board of Appraisers affirming the valuation of the taxpayer's property by the Essex Town Board of Civil Authority.

The property involved was originally operated as an apartment complex of seventy-two units from July 1978 to June 19, 1980, by the present owners of the bulk of the remaining units. At that time the taxpayer converted the premises to condominium units by filing a declaration as required by 27 V.S.A. § 1303. Title 27 V.S.A. § 1311 (6) requires the declaration to set out the value of each unit, including the percentage of un-

divided interest in common areas and their value, in order that each unit may be separately assessed for tax purposes, with separate tax bills for the owners of each unit. 27 V.S.A. § 1322. All this was done.

The declaration put the value of the units at either $39,200 or $39,900. At the time of the hearing, two units had been sold outright at the $39,900 figure and seven more were under contract of sale at the same price.

At the time of the change from apartment complex to condominium the property remained physically unaltered. Some surveying expense and other costs relating to drafting and filing the condominium declaration were incurred, but there is no evidence of any other expense.

There was a change in the tax assessment. The seventy-two unit apartment complex was assessed at a total figure which amounted to a taxable assessment of $14,049.11 per unit. With the change to condominium status, the reappraisal set the per unit assessment at $18,100. As might be expected, this change in assessment provoked the appeal.

In order to clearly understand the final figures arrived at in Essex, something must be said about that town's assessment procedures. State law requires listers to appraise property at fair market value. 32 V.S.A. §§ 3431, 3481. In Essex, the listed value of the property is a different value than appraised value. The means of arriving at this differential will be part of the concern of this opinion, but, first, the issue of the proper determination of fair market value as raised by the taxpayer must be dealt with.

The taxpayer asserts that the conversion to condominiums without physical change in the property was not such a value-altering event as to justify a change in assessment. Starting with the proposition that fair market value is the required objective of the statute, the taxpayer's position cannot be sustained.

The taxing statute, 32 V.S.A. § 3481, makes fair market value the standard for appraisal. Since it is usually a value estimated in the absence of actual, relatively concurrent, sale, of necessity many elements must go into the valuation to permit the value to closely approximate the potential return to the seller and cost to the buyer in free and open sale. When,

however, fair market value can be established by the operation of bona fide sale transactions themselves, a market value is perforce established for appraisal purposes. There is then no need to consider factors useful in trying to estimate market value. So long as the sales evidence proves a transaction between a willing buyer and willing seller at arms length, entered into in good faith, and not to "rig" a value, the tax statute is not concerned about the reasons either buyer or seller attributed the agreed value to the property.

Moreover, the concern shown in this case for fitting the change into some valuation formula illustrates the weakness of such formulas generally, and supports this Court's general disapproval of such devices. *Bloomer* v. *Town of Danby,* 135 Vt. 56, 57–58, 370 A.2d 194, 195 (1977). Fortunately, in this case, it was the formula that was manipulated while the market value was recognized, so the statutory purpose remained intact.

■ The appraisal deals with seventy-two substantially identical units, with two sold and seven others under contract for sale at identical prices, $39,900. Moreover, the taxpayer, in its declaration of condominium, listed the selling price at $39,900 save for a few offered at $39,200 because of a slightly smaller window area. Between the listing and the sales the evidence sufficiently established the fair market value, and it was recognized in the findings. There was no need for application of devices for approximation of the value, and the lack of use of such devices was appropriate.

The taxpayer contends that the assessment as apartments should have contained the prospective value of the units as condominiums. If this were so the market value of apartments would equal that of condominiums of equal circumstance. The evidence refutes that, and to follow that proposal would do violence to the statutory directive to assess at fair market value.

■ Moving from the appraisal value to the listed value, as differentiated in 32 V.S.A. § 3481 and *Town of Barnet* v. *Palazzi Corp.,* 135 Vt. 298, 301–02, 376 A.2d 24, 27 (1977), concern with the uniformity of any ratio between fair market value and listed value comes to the fore. Presumptively, upon

a showing that the appraisal conforms to fair market value, the listing is valid, and the burden is upon the taxpayer to demonstrate inequality in the manner in which the ratio of fair market value to listed value applied to its property as compared to other taxable property in the town. *Id.* at 303, 376 A.2d at 28.

In this case the taxpayer produced evidence reflected in the Board's findings that comparable condominium units were listed for tax purpose at values ranging from 33% to 58% of sale price per unit. The units subject to this appeal were found to be listed at 45% of fair market value. From this finding, and without making any specific findings with respect to any of the comparables in connection with the disparity, the Board concluded that the listed value was appropriate, being in the middle of the percentage variation.

■ Although the transcript and the exhibits reveal plentiful evidence relating to the differences between the various properties treated as comparables, we are left without specific guidance as to the basis of the Board's rather summary conclusion. This problem as to listed values parallels similar shortages in findings relating to fair market value. See *Schweizer* v. *Town of Pomfret,* 134 Vt. 436, 437, 365 A.2d 134, 135 (1976). Since the failure is in the Board's findings, and not in the tender of evidence by the taxing authority, a remand is called for under *Corrette* v. *Town of St. Johnsbury,* 140 Vt. 315, 437 A.2d 1112 (1981), rather than a reinstatement of the former appraisal. *Welch* v. *Town of Ludlow,* 136 Vt. 83, 89, 385 A.2d 1105, 1109 (1978).

■ It should perhaps be noted here as a matter of clarification that the fact that there is a constitutional compulsion to recognize a general discounting by a town of all of its taxable property below the statutory requirement of 100% under 32 V.S.A. § 3481 (2) does not mean that towns are free to ignore the 100% requirement or that this Court approves such discounts as lawful. This Court, by the nature of the taxpayer rights at issue, is required to enforce this reduction as a constitutional matter, and the issue of the validity of the general lowering of all listing is not before us.

*Reversed and remanded.*