BOARD OF ASSESSORS OF BOSTON *vs*. THOMAS A. DIAB.

Suffolk. October 10, 1985. — January 16, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Value. Taxation*, Real estate tax: value. *Evidence*, Value.

In a proceeding before the Appellate Tax Board for abatement of a real estate tax on property which was sold eleven months after the tax was assessed, the board erred in using a capitalization of income approach in determining the property's value and in disregarding the actual sale price of the property as evidence of its value, where the board's reason for disregarding the sale price was that "the tax factors which made the property an attractive investment at the time of sale were not present as of" the assessment date and where there had been no change in the applicable tax law during the period in question. [562-563]

APPEAL from a decision of the Appellate Tax Board.

*John D. Stuebing,* Special Assistant Corporation Counsel (*Jan L. Rosker & Marie T. Lee,* Special Assistant Corporation Counsel, with him) for the Board of Assessors of Boston.

*Donald D. Cooper* (*Kenneth J. Mickiewicz* with him) for the taxpayer.

O'CONNOR, J. The board of assessors of Boston (assessors) appeals from a decision of the Appellate Tax Board (board) granting Thomas A. Diab an abatement of real estate taxes for fiscal year 1981. On appeal, the assessors argue that the board's decision must be reversed because it was based on an erroneous conclusion of law. We agree and, accordingly, remand this case to the board for further proceedings.

We summarize the facts as found by the board. The property in question is a ten-story office building located at 155 Berkeley Street in Boston. Constructed in 1917, the building served as the headquarters of the Salada Tea Company for many years. On January 1, 1980, the assessment date for fiscal year 1981, Diab was the owner of the subject property. For the 1981 fiscal year the assessors valued the property at $750,000 and assessed

a tax on that amount at the rate of $272.70 per thousand dollars. Subsequent to the assessment date, in October of 1980, Diab sold the property to Berkeley Associates, Ltd., for $2,300,000.

After Diab's request for an abatement was deemed denied by the assessors, he appealed to the board pursuant to G. L. c. 59, §§ 64, 65 (1984 ed.). At the hearing before the board, the parties agreed that two issues were raised by Diab's appeal: the fair cash value of the property and disproportionate assessment. There was no dispute as to the disproportionate assessment issue. The parties agreed at the outset of the proceedings that an equalized tax rate of $99 per thousand was the appropriate tax rate for the 1981 fiscal year.[1] As to the fair cash value of the property, the parties indirectly acknowledged that the property had been assessed at less than its fair cash value for the 1981 fiscal year because both Diab and the assessors presented values to the board that exceeded $750,000. Diab's expert witness, Webster A. Collins, testified to a value of $1,023,000, which he calculated under the capitalization of income approach. John D. Moore, the assessors' expert, offered an opinion of value of $2,086,000. Moore arrived at his valuation figure by adjusting the actual sales price of $2,300,000 by 9.3% to reflect the approximately eleven months that had elapsed between the assessment date and the date of the sale. Although Moore did not explain why such a reduction was necessary, it is clear that Moore reduced the actual sale price by 9.3% to account for the value appreciation that had taken place between January 1, 1980, and October 22, 1980.

In its decision, the board stated that it selected the capitalization of income approach as the best measure of fair cash

---

[1] When the board finds that a taxpayer has been assessed disproportionately with respect to the other properties within a municipality, the board is required to compute an equalized tax rate and apply that rate to the fair cash value of the subject property to determine the proper amount of tax. G. L. c. 58A, § 14 (1984 ed.). An "equalized tax rate" is computed by dividing the total taxes assessed for a municipality by the fair cash value of all taxable property of that community. *Id.*

value for fiscal 1981.[2] The board explained that it found the capitalization of income approach to be more reliable evidence of value than an adjusted sale price "because the evidence indicates that the tax factors which made the property an attractive investment at the time of sale were not present as of January 1, 1980." The board performed its own calculations under the capitalization of income approach and determined $1,511,400 to be the fair cash value of the property. Applying an equalized tax rate of $99 per thousand to this amount, the board determined that Diab was entitled to an abatement of $54,896.

On appeal, the assessors argue that the board's decision must be reversed because the board's selection of the capitalization of income approach as the proper valuation method was based on an erroneous conclusion of law. We agree.[3] The only reason articulated by the board for disregarding the actual sale price of the property as evidence of the fair cash value of the property for fiscal year 1981 was the board's view that "the tax factors which made the property an attractive investment at the time of sale were not present as of January 1, 1980." The only evidence before the board that bore on tax factors pertained to investment tax credits under the Internal Revenue Code. It is clear that the board believed that the law governing investment tax credits changed between January 1, 1980, and October 22, 1980. However, the board was mistaken. Section 48(g), the section of the Internal Revenue Code governing investment tax credits on certain rehabilitated buildings, was enacted on November 6, 1978 (Pub. L. No. 95-600, § 315(b), 92 Stat. 2828 [1978]), and the substance of this section remained unchanged until the enactment of the Economic Recovery Tax

---

[2] The board consolidated Diab's appeal with an appeal taken by Berkeley Associates, Ltd., as to the 1982 fiscal year assessment on the property. For fiscal 1982, the board determined the best evidence of value to be the October, 1980, sale of the property.

[3] Ordinarily, "[t]he board is entitled to select valuation methods, as long as they are reasonable and supported by the record." *North American Philips Lighting Corp.* v. *Assessors of Lynn,* 392 Mass. 296, 299 (1984), quoting *Blakeley* v. *Assessors of Boston,* 391 Mass. 473, 477 (1984).

Act of 1981 (Pub. L. No. 97-34, 95 Stat. 172 [1981]). The Economic Recovery Tax Act was enacted on August 13, 1981, and the provisions pertinent to this case went into effect on January 1, 1982. Clearly, then, the investment tax credits available to an investor on October 22, 1980, the date of the sale, and January 1, 1980, the assessment date for fiscal 1981, were the same. Therefore, the board's selection of the capitalization of income approach was based on an error of law.

"When an administrative agency has made an error of law, the duty of the Court is to 'correct the error of law committed by that body, and after doing so to remand the case to the [agency] so as to afford it the opportunity of examining the evidence and finding the facts as required by law.' " *NLRB* v. *Enterprise Ass'n of Steam Pipefitters, Local 638,* 429 U.S. 507, 522 n.9 (1977), quoting *ICC* v. *Clyde S.S. Co.,* 181 U.S. 29, 32-33 (1901). Accordingly, we reverse the board's decision granting Diab an abatement of fiscal year 1981 real estate taxes and remand the case to the board for further proceedings.

*So ordered.*