## Barrett/Canfield, LLC v. City of Rutland

[762 A.2d 823]

No. 98-475

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 1, 2000

*John M. Ruggiero* of *Ruggiero Associates*, Rutland, for Plaintiff-Appellant.

*Christopher P. Sullivan*, City Attorney, and *Henry C. Brislin*, Assistant City Attorney, Rutland, for Defendant-Appellee.

**Johnson, J.** Taxpayer Barrett/Canfield, LLC, appeals a decision on the tax assessment of its property in the City of Rutland. The property was formerly owned by Tambrands, Inc., and consisted of 27.75 acres including a 217,000 square-foot industrial building. On May 30, 1997, taxpayer purchased 9.7 acres including the industrial building for $1,763,650. The City subsequently assessed the value of taxpayer's property at $4,598,000. The trial court found that, because the property was not adequately exposed to the market, the sale price was not a reliable indicator of fair market value and set the assessment value at $4,000,000. On appeal, taxpayer argues that because the purchase was between a willing buyer and willing seller, was made in good faith, and was contemporaneous with the assessment date, it should be dispositive of the fair market value. We agree and reverse.

For months preceding the events of this case, local newspapers had reported that Tambrands was considering closing its Rutland manufacturing plant. In September 1996, taxpayer read in the local newspaper that Tambrands had finally decided to close the plant. Taxpayer contacted a real estate broker, who inquired of Tambrands whether the plant was for sale. These inquiries resulted in an initial purchase and sale agreement for the property on October 18, 1996, for $2,000,000. After nine months of negotiations, the agreement was amended to reflect a subdivision of the property with taxpayer taking only 9.7 acres, including the building. This agreement was executed on May 30, 1997, for a sale price of $1,763,650. It is undisputed that the sale was made in good faith between two corporations at arms-length.

The City of Rutland initially assessed the property as of April 7, 1997, at a value of $4,598,000. Taxpayer appealed to the board of civil authority, which reduced the assessment to $4,346,800. Taxpayer next appealed to the Rutland Superior Court.

At trial, both parties presented testimony as to the estimated fair market value of the property. Taxpayer presented evidence of the purchase price as well as an independent appraisal commissioned by the mortgage provider. This appraisal estimated fair market value at $1,900,000, utilizing both the income capitalization approach and the sales comparison approach. This figure is notably close to the sale price. The City of Rutland presented the results of an appraisal that it had commissioned which estimated fair market value at $4,000,000, utilizing the cost approach, the capitalization approach, and the sales comparison approach. After a hearing on the merits, the trial court found that the sale price was not indicative of the fair market value because the property was not actively marketed.

The issue before us is whether market exposure is a necessary element in establishing a bona fide sale. This question is one of law. Our review of conclusions of law is nondeferential and plenary. See *Thompson v. Dewey's South Royalton, Inc.*, 169 Vt. 274, 276, 733 A.2d 65, 67 (1999).

■ Real property is taxed at its "estimated fair market value," which is defined as "the price which the property will bring in the market when offered for sale and purchased by another." 32 V.S.A. § 3481(1). The statute does not mandate any particular method to determine estimated fair market value. There is no need for any estimation method, however, when a recent bona fide sale exists to illustrate fair market value. See *Royal Parke Corp. v. Town of Essex*, 145 Vt. 376, 378-79, 488 A.2d 766, 768 (1985).

We must consider, therefore, what makes a sale bona fide. A bona fide sale is one that occurs between a willing buyer and a willing seller, at arms-length, in good faith, and not to "rig" a fair market value. *Id.* An "arms-length" transaction is voluntary, generally takes place in an open market, and one in which the parties act in their own best interest. See *Beach Properties, Inc. v. Town of Ferrisburg*, 161 Vt. 368, 375-76, 640 A.2d 50, 54 (1994). In *Royal Parke*, where we considered the fair market value of seventy-two identical condominium units, we held that the fair market value was "sufficiently established" when two had sold and seven others were under contract for sale at the same price. 145 Vt. at 379, 488 A.2d at 768. We observed that, beyond the requirement of a bona fide sale, "the tax statute is

not concerned about the reasons either buyer or seller attributed the agreed value to the property." *Id.*

Nowhere in our cases or in 32 V.S.A. § 3481 is there a requirement that a property be actively marketed in order to establish a bona fide sale. The statute requires, and our cases have consistently held, that all that is required for a bona fide sale is that it be between a willing buyer and seller at arms length, in good faith and not to "rig" a value. See *Royal Parke*, 145 Vt. at 379, 488 A.2d at 768. We have, in fact, previously rejected an argument based on the length of time a property was marketed. See *Wilde v. Town of Norwich*, 152 Vt. 327, 566 A.2d 656 (1989). In *Wilde*, the taxpayer offered proof of a recent sale for a value considerably less than the town's assessed value. See *id.* The only evidence offered by the town regarding the value was the town's appraisal, the fact that the property had been for sale for some time, and the owner was "anxious to sell." See *id.* This evidence was insufficient to satisfy the town's burden in discrediting the sale price as fair market value. See *id.* at 330, 566 A.2d at 657. We therefore upheld the decision granting summary judgment to the taxpayer and establishing the sale price as the fair market value, stating that the sale price "is strong, if not conclusive, evidence of fair market value." *Id.* at 329, 566 A.2d at 657.

This approach to fair market value is supported by the decisions of a number of our sister states. For instance, the New York Court of Appeals has held that unless explained as abnormal, an arms-length sale of "recent vintage" is evidence of the "highest rank" in determining the true value of property. *Plaza Hotel Assocs. v. Wellington Assocs., Inc.*, 333 N.E.2d 346, 349 (N.Y. 1975). In *Board of Assessors of Boston v. Diab*, 487 N.E.2d 491, 492-93 (Mass. 1986), the Supreme Judicial Court of Massachusetts ruled that the board of assessors had erroneously disregarded an actual sale price as evidence of fair market value due to a mistake of law. The Supreme Judicial Court of Maine has stated that a bona fide sale of property is most significant evidence of market value. See *Arnold v. Maine State Highway Commission*, 283 A.2d 655, 658 (Me. 1971).

While an actual sale is strong evidence of fair market value, there may be situations where a court must look beyond a sale. For instance, where some evidence undermines the bona fide nature of the sale, the court may extend its inquiry. See, e.g., *Beach Properties*, 161 Vt. at 376, 640 A.2d at 54 (holding that while sale was voluntary, parties did not act in their own interest but acted instead to protect common family interests; therefore sale price was not fair market

value). We have also held that an auction sale price following a foreclosure was a less reliable indicator of fair market value than the foreclosing bank's own appraisal. See *Vermont Nat'l Bank v. Leninski*, 166 Vt. 577, 579, 687 A.2d 890, 892 (1996) (mem.).

The circumstances in this case, however, provide no reason to disregard the sale price. Here, both the seller and the buyer are sophisticated corporations. Tambrands is an international corporation with eleven manufacturing plants all over the world. Tambrands agreed to this sale only after consultation with the president of the corporation and approval from its board of directors. Taxpayer Barrett/Canfield is also an international corporation employing over 300 employees. Prior to making an offer to buy the plant, taxpayer first contacted an experienced real estate professional for advice concerning the purchase of the Tambrands property. After nine months of negotiations a deal was finally reached at a price that both sides considered fair. Finally, the price was approved by taxpayer's mortgage provider pursuant to the provider's own estimate.

The trial court's factual findings support all of our requirements for setting the fair market value at the sale price. The court concluded, however, that the sale to taxpayer was not bona fide because the property was not "actively marketed." The court concluded this lack of marketing did not meet the requirements established by the definition of "Market Value" in 12 C.F.R. § 34.42(g) (2000) to be conclusive of fair market value. It was an error of law to import the requirement of "active marketing" into the definition of a bona fide sale. Our statute neither mentions such a requirement explicitly nor suggests it as an implicit element. Because our statute is unambiguous, we apply the provision using the plain meaning of the words chosen by the Legislature. See *In re P.S.*, 167 Vt. 63, 70, 702 A.2d 98, 102 (1997).

As long as a bona fide contemporaneous sale is shown, a presumptive fair market value for the property is established, and no further inquiry is required. As the City in this case failed to demonstrate that the sale was other than bona fide, the court erred in concluding that the sale price was not the property's fair market value.

*Reversed.*