2007 VT 10

### GREAT BAY HYDRO CORPORATION v. TOWN OF DERBY

[917 A.2d 486]

No. 05-504

¶ 1. January 25, 2007. Great Bay Hydro Corporation appeals from a decision of the state appraiser setting the listed value of its property used as a hydroelectric generating plant in Orleans County. Great Bay contends the state appraiser departed from settled law in rejecting a recent sale of the property as conclusive evidence of its fair market value for tax assessment purposes. We affirm.

¶ 2. The property in question is part of the Clyde River Hydroelectric Project. The project comprises several parcels, including a dam, impoundment area, and three hydroelectric turbines located in the Town of Derby and the City of Newport. The Derby parcels amount to more than 500 acres. The Newport parcel is over forty-six acres. For many years, Citizens Utilities Company, the predecessor to Citizens Communications Company (Citizens), owned and operated the project under a license from the Federal Energy Regulatory Commission and a Water Quality Certification permit from the State of Vermont. The current federal license and state permit include a number of environmental-protection measures which, according to Great Bay, have reduced the project's annual power output and increased its generating costs.

¶ 3. On April 1, 2004, Citizens sold the project to Great Bay for $10. The purchase and sale agreement required Citizens to indemnify Great Bay up to $3.5 million, over a period of three years from the date of closing, for costs incurred to bring the project into compliance with the conditions contained in the state and federal permits. Notwithstanding the nominal purchase price, Great Bay paid Vermont property transfer tax in the amount of $41,274.45 in connection with the transaction based on an expressed value of $3,301,956. Assessors in the city and the town set the 2004 listed value of the properties involved at $2,504,300 and $1,193,200, respectively, and these values were affirmed by their respective boards of civil authority. Great Bay appealed both rulings to the state appraiser, who consolidated the appeals, held an evidentiary hearing in May 2005, and issued a written decision in June 2005.

¶ 4. The state appraiser rejected Great Bay's claim that the sale price of $10 necessarily established the property's fair market value, finding in this regard that the sale was not an arms-length transaction. The appraiser based this finding on several considerations, including the fact that the property was privately offered to a limited number of buyers rather than exposed on the open market. The appraiser also noted that

the sale to Great Bay was part of an overall plan by Citizens to divest all electrical power assets and that the parcels here in question were, in fact, its last electrical assets to be liquidated. After reviewing alternative appraisals and methodologies submitted by the parties, the state appraiser determined that "[t]he income approach provides the most reliable estimate of Fair Market Value for the Subject property," and, therefore, set the listed value of the property in the town at $1,092,600 and in the city at $1,721,700 (after adjusting for local equalization ratios). This appeal by Great Bay followed.[1]

¶ 5. We note at the outset the deferential character of our review. We assess decisions of the state appraiser to ensure that they "are supported by findings rationally drawn from the evidence and are based on a correct interpretation of the law." *Barrett v. Town of Warren*, 2005 VT 107, ¶ 5, 179 Vt. 134, 892 A.2d 152. Thus, we will not disturb a fair market value supported by the evidence and findings absent a clear error of law. *Id.* Furthermore, interpretations of statutory provisions by the agency responsible for their administration will not be disturbed absent compelling indication of error. *Id.* With these standards in mind, we turn to Great Bay's claim on appeal.

---

[1] Great Bay's appeal is limited to the state appraiser's decision to disregard the sale price in determining fair market value; it has not challenged the evidence or findings underlying the values determined by the appraiser using the income approach. Accordingly, in concluding that the appeal lacks merit, we necessarily affirm the fair market value assigned to the properties by the state appraiser, although we express no view on the method the state appraiser employed or its application in this case.

¶ 6. Great Bay contends that the purchase and sale agreement consummated on the same date as the municipal appraisals in this case necessarily established the fair market value of the property. Great Bay relies principally on the property tax statute, 32 V.S.A. § 3481(1), which equates appraisal value with "estimated fair market value" and defines the latter as "the price which the property will bring in the market when offered for sale and purchased by another," as well as this Court's decision in *Royal Parke Corp. v. Town of Essex*, 145 Vt. 376, 379, 488 A.2d 766, 768 (1985), where we observed that, when a recent arms-length sale of the property has occurred, "a market value is perforce established for appraisal purposes." Great Bay overlooks the final sentence of the statute, however, which provides that, "[i]n determining estimated fair market value, the sale price of the property in question is one element to consider, but is not solely determinative." 32 V.S.A. § 3481(1). Consistent with this provision, we have held that, while sale price may represent a persuasive and favored method of determining fair market value, "there may be situations where a court must look beyond a sale." *Barrett/Canfield, LLC v. City of Rutland*, 171 Vt. 196, 199, 762 A.2d 823, 825 (2000); accord *Barrett*, 2005 VT 107, ¶ 14 (observing that, while we have characterized sale price as the most persuasive method of determining fair market value, there may arise situations "in which the state appraiser may, consistent with the statute, disregard a sale and turn to other evidence of fair market value"); see also *Lake Morey Inn Golf Resort v. Town of Fairlee*, 167 Vt. 245, 249, 704 A.2d 785, 788 (1997) ("It is the duty of the Board to explore all methods that help in determining fair market value . . . .") (quotation omitted); *Gionet v. Town of Goshen*, 152 Vt. 451, 453, 566 A.2d 1349, 1350 (1989) ("The unswerving

goal of the statute is fair market valuation, but there is no single pathway to that goal."); *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 567, 556 A.2d 64, 66 (1988) ("[O]ur statute does not prescribe the method nor limit the manner in which evidence of fair market value may be presented to the Board."). Furthermore, we will not second-guess the state appraiser's choice of methodology if supported by the evidence and findings, and sound in law. See *Vt. Elec. Power Co. v. Town of Vernon*, 174 Vt. 471, 473, 807 A.2d 430, 434 (2002) (mem.) ("It is within the discretion of the state appraiser to determine the most appropriate method for arriving at fair market value.").

¶ 7. As explained above, the state appraiser here rejected the recent sale price of the Clyde River property as reliable evidence of fair market value based largely on the fact that the property was privately offered to a limited number of potential buyers. Great Bay argues that this fact alone did not undermine the bona fides of the sale. Although we are inclined to agree that no inflexible rule requires that all property, however unique, must be openly marketed to establish an arms-length transaction,[2] we need not resolve this particular issue. While an actual sale may be "strong evidence of fair market value," there may be any number of situations "where some evidence undermines the bona fide nature of the sale," thereby requiring the court to "extend its inquiry." *Barrett/Canfield*, 171 Vt. at 199, 762 A.2d at 825; see also *Vt. Nat'l Bank v.*

---

[2] As we observed in *Barrett/Canfield*, "[n]owhere in our cases or in 32 V.S.A. § 3481 is there a requirement that a property be actively marketed in order to establish a bona fide sale." 171 Vt. at 199, 762 A.2d at 825.

*Leninski*, 166 Vt. 577, 579, 687 A.2d 890, 892 (1996) (mem.) (holding that auction sale following foreclosure was less reliable indicator of fair market value than bank appraisal); *Beach Props., Inc. v. Town of Ferrisburg*, 161 Vt. 368, 376-77, 640 A.2d 50, 54 (1994) (upholding determination that sale price did not reflect fair market value where intra-family sale of stock, while voluntary, was not made in the parties' own interest but instead to protect common family interests). Indeed, our rule in this regard is consistent with "the broad[] range of authority [which] supports the proposition that . . . a sale price is not necessarily conclusive evidence of the property's value." K. Karnezis, Annotation, *Sale Price of Real Property as Evidence in Determining Value for Tax Assessment Purposes*, 89 A.L.R.3d 1126 (1979).

¶ 8. Apart from the absence of a classic open-market sale, the record here plainly shows that the purchase and sale agreement between Citizens and Great Bay — predicated on a nominal consideration of $10 — was "not one in the way of ordinary business." *Thaw v. Town of Fairfield*, 43 A.2d 65, 67 (Conn. 1945) (holding that town appraiser could properly reject sale price as evidence of the property's true value where, despite a willing buyer and seller, the "predominating influence in the sale was a desire on the part of [seller] to dispose of the property speedily"). Substantial authority supports the principle that where, as here, specific circumstances surrounding a transaction operate to dramatically depress the sale price of property below its reasonable value, courts may look to indicia other than the sale price as competent evidence of fair market value. See, e.g., *Josten-Wilbert Vault Co. v. Bd. of Equalization*, 138 N.W.2d 641, 643 (Neb. 1965) (holding that "'[s]ale price' [was] not synonymous with actual value or fair market value" where the sale was by a company en-

gaged in the process of liquidating its properties); *Rek Inv. Co. v. City of Newark*, 194 A.2d 368, 372-73 (N.J. Super. Ct. App. Div. 1963) (holding that assessor was not bound by the sale price as an "exclusive criterion of true value" where the sale of real property was by an entity "going out of the real estate business" and the property in question "was its last remaining parcel of real estate"); *F.W. Woolworth Co. v. Srogi*, 461 N.Y.S.2d 97, 99 (App. Div. 1983) (mem.) (upholding appraiser's rejection of sale price as an accurate measure of value in light of the "seller's desire to rid itself of the property"); *E. Am. Energy Corp. v. Thorn*, 428 S.E.2d 56, 60 (W.Va. 1993) (upholding $3 million appraisal of energy processing plant, nearly four times in excess of recent sale price, where evidence showed that taxpayer's purchase offer was accepted by a company seeking to entirely "divest its oil and gas property"); *State ex rel. Hein v. City of Barron*, 87 N.W.2d 785, 788 (Wis. 1958) (upholding assessment of commercial property nearly twice the recent sale price where the evidence revealed that the seller was "endeavoring to dispose of" multiple additional properties during the same period).

¶ 9. As noted, the city and town satisfied their initial burden in this case to produce evidence of the subject property's fair market value, evidence which Great Bay has not challenged on appeal. Accordingly, Great Bay retained the ultimate burden of persuasion on all contested issues, a burden carried not merely by "impugning" the appraiser's methods or "questioning its understanding of assessment theory or technique," but rather by demonstrating "an arbitrary or unlawful valuation." *Barrett*, 2005 VT 107, ¶ 8. Great Bay has not shown that the state appraiser acted arbitrarily or unlawfully in concluding that the circumstances surrounding the sale of the property rendered the purchase price an unreliable indicator of fair market value. Accordingly, we discern no basis to disturb the judgment.

*Affirmed.*