Town of Bethel v. State of Vermont, No. 36-1-13 Wrcv (Teachout, J., Jan. 24, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windsor Unit** | **Docket No. 36-1-13 Wrcv** |

**TOWN OF BETHEL**

**v.**

**STATE OF VERMONT,
DEPARTMENT OF TAXES,
DIVISION OF PROPERTY
VALUATION AND REVIEW**

### DECISION
### MOTION FOR SUMMARY JUDGMENT

This case is an appeal of the Town of Bethel ("Appellant") of a Decision of the Valuation Appeal Board of the State of Vermont, Department of Taxes, Division of Property Valuation and Review ("Appellee"). The matter before the Court is the Appellee's Motion for Summary Judgment, filed April 25, 2013. Oral argument was heard on January 10, 2014. Attorney Debra L. Leahy represents the Town of Bethel. Assistant Attorney General Suzanne M. Monte represents the State of Vermont.

The issue is the inclusion in the 2010 equalization study of a 2008 sale of property by Jacqueline E. Proios to Green Crow Corporation (the "Sale"). The property was listed for $161,500 in the 2008 Grand List. Green Crow Corporation paid $325,000 for the property in October of 2008. Approximately one week after the Sale closed, Green Crow Corporation was issued a heavy harvest permit for the property, and thereafter harvested a substantial amount of timber from the property, thus removing that value from the land. The property was listed for $161,500 in the 2009 Grand List, after the harvest. The State used the sales price in its equalization study to compare listed values with sales prices.

Appellant appealed the inclusion of the Sale in the equalization study to the Director of Property Valuation and Review, who found that the Sale was properly included in the study. Thereafter, Appellant appealed to the Valuation Appeal Board, which held that the Sale should remain in the study, but that the value attributed to the Sale should be $161,500 rather than the sale price of $325,000. Upon reconsideration in December 2012, the Valuation Appeal Board reversed its earlier decision and found that the full sale price of $325,000 should be included in the equalization study. The appeal to this Court followed.

On April 25, 2013, Appellee moved for summary judgment, claiming that its inclusion of the full sale price in the equalization study was rational, reasonable, and

within its discretion. Appellant responded to this motion on August 1, 2013, countering that the Sale should be excluded from the study because it constitutes an outlier. Appellee filed a Reply on August 21, 2013, asserting that the statutes controlling the equalization study do not suggest that the Sale should be treated as an outlier.

At the January 10, 2014 hearing, Appellee argued that nothing about the Sale made it appropriate to exclude it from the equalization study and that, therefore, the Court should defer to Appellee's decision to include it. Appellant responded that valuing timberland is too complicated for town listers to accomplish accurately, that standing timber should not be considered in valuing the underlying land, and that the Sale was not an arm's-length transaction.

## ANALYSIS

To prevail on a motion for summary judgment, a movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). In ruling on a motion for summary judgment, the court will take "all allegations made by the nonmoving party as true." *Richart v. Jackson*, 171 Vt. 94, 97 (2000). Here, Appellant and Appellee do not dispute the underlying facts of this matter. Instead, they disagree about the appropriate application of the law to those facts.

*Town of Killington v. Dep't of Taxes* emphasizes that "[t]he Legislature… specifically provided that the determination of each municipality's equalized education grand list was to be based on such methods, as in the judgment of the commissioner, and in view of the resources available for that purpose, shall be appropriate to support that determination." 2003 VT 88, ¶ 5, 176 Vt. 70 (internal quotations omitted). "Thus, to successfully challenge the Commissioner's equalization methodology… [it is a town's burden] to demonstrate that the State's approach was wholly irrational and unreasonable in relation to its intended purpose." *Id.* ¶ 6. Both parties agree that Appellant must meet this burden for the Court to overturn Appellee's decision to include the full price from the Sale in the equalization study.

Generally, Appellant argues that Appellee's inclusion of the full price from the Sale in the equalization study goes against the study's purpose of ensuring equity among municipalities in the collection and distribution of education funds. In support of this position, Appellant makes three separate arguments.

First, Appellant argues that the Town of Bethel's listers do not have the expertise to properly value property with standing timber and, therefore, could not appropriately value the property involved in the Sale. Appellant further claims that it is unrealistic for listers to understand the intricacies of the timber market because timber is a commodity that they have no experience valuing.

Second, Appellant asserts that the standing timber on the property involved in the Sale should not be valued as part of the real property. *See* 32 V.S.A. § 3606 ("The sale or

2

conveyance of standing timber shall not affect the valuation of the underlying land."). According to Appellant, 32 V.S.A. § 3606 treats standing timber separately from the underlying real property and, therefore, the value of the timber should not affect the value of the property.

Third, Appellant asserts that the Sale was not an arm's-length transaction because the property was never publicly put up for sale and there was no open bidding process for the property. Appellant claims that the Sale was a private transaction between Jacqueline E. Proios and Green Crow Corporation, which does not represent the fair market value of the property.

Appellant's arguments are not sufficient to show error in the Decision of the Valuation Appeal Board. With respect to the practical difficulty of lay listers valuing timber land, there is no authority that exempts property data from being included in the equalization study because valuing a particular type of property is too difficult or complicated for them.

Appellant's argument that standing timber value should not be considered as property value in connection with the sale of timberland is not a correct interpretation of 32 V.S.A. § 3606. Although the plain language of the statute is confusing, legislative history of the statute makes clear that the 1997 amendment to 32 V.S.A. § 3606 was designed to clarify that "standing timber is taxed to the owner of the underlying land, even if the timber has been conveyed separately." Summary of the 1997 Acts and Resolves, Act. No. 71, Ex. K to State's Reply to Town of Bethel's Response to State's Mot. for Summ. J. Accordingly, contrary to Appellant's position, 32 V.S.A. § 3606 does not exclude the value of standing timber from the value of the underlying land.

Finally, with respect to the argument that the Sale was not a legitimate transaction for the purposes of the equalization study, "[A] bona fide sale is one that occurs between a willing buyer and a willing seller, at arms-length, in good faith, and not to 'rig' a fair market value." *Barrett/Canfield, LLC v. City of Rutland*, 171 Vt. 196, 198 (2000). A property need not be "actively marketed in order to establish a bona fide sale." *Id.* at 199. Indeed, here, although the property at issue was not actively marketed, a willing buyer and seller agreed upon a price and nothing suggests that the sale price was inappropriately manipulated.

Appellant argues that the Sale should be treated as an "outlier" that should not be included in the equalization study. 32 V.S.A. § 5405(d) provides for the deletion of "outliers" under certain circumstances. "Any determination of fair market value made by the commissioner under this section shall be based upon such methods, as in the judgment of the commissioner, and in view of the resources available for that purpose, shall be appropriate to support that determination. If the common level of appraisal is calculated using the weighted mean of ratios, any outlier shall be carefully reviewed and deleted if it will significantly affect the weighted mean, particularly if the outlier is a high-value property." 32 V.S.A. § 5405(d).

As used in 32 V.S.A. § 5405, the term "outlier" does not mean any sale that appears out of the ordinary. The term applies only if the "weighted mean of ratios" was used to calculate the common level of appraisal, and context shows a statistical application of the term. The Appellee's affidavits establish use of the weighted mean of ratios. Appellant has not shown that the Sale constitutes an outlier compared to other property transactions in the Town of Bethel, but even if it were, the Sale would not automatically be deleted from the equalization study. *See* 32 V.S.A. § 5405(d). The statute merely requires that the Sale "be carefully reviewed and deleted if it will significantly affect the weighted mean." *Id.* Appellee's affidavits show that at the Town's request, the Division evaluated the Sale, and determined that there was not a reason to delete it. Appellant has not produced evidence to the contrary.

"Absent a clear and convincing showing to the contrary, decisions made within the expertise of… agencies are presumed correct, valid and reasonable." *Town of Killington*, 2003 VT 88, ¶ 5. Performance of an equalization or sales ratio study is uniquely within the expertise of the Division of Property Valuation and Review, and "proper deference to the Commissioner's reasoned judgment requires that [the court] uphold her chosen methodology if credible evidence shows that it was rational and reliable." *Id* at ¶ 10.

Moreover, "to successfully challenge the Commissioner's equalization methodology, it was Killington's burden here to demonstrate that the State's approach was wholly irrational and unreasonable in relation to its intended purpose." *Id.* at ¶ 6. Appellant has not met the burden of showing that the inclusion of the sale price was "wholly irrational and unreasonable." Therefore, the Appellee's motion must be granted.

ORDER

Appellee's Motion for Summary Judgment is hereby *granted*.

Dated at Woodstock, Vermont, this 23rd day of January, 2014.

Honorable Mary Miles Teachout
Superior Court Judge

4