NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 70

No. 2019-400

| | |
|---|---|
| Gabriel Martinez | Supreme Court |
| | |
| | On Appeal from |
| v. | Property Valuation and Review |
| | Division |
| | |
| | |
| Town of Hartford | June Term, 2020 |

Merle R. Van Gieson, Hearing Officer

Gabriel Martinez, Pro Se, Quechee, Plaintiff-Appellant.

Charles L. Merriman of Merriman Smart, PLC, Montpelier, for Defendant-Appellee.


PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.  **ROBINSON, J.**  Taxpayer Gabriel Martinez appeals from the decision of a Property Valuation and Review Division (PVR) hearing officer setting the fair market value of his property for purposes of the 2017 Town of Hartford grand list.  Taxpayer argues that the hearing officer erred in estimating fair market value based on sales of comparable properties because the value was conclusively established by the price taxpayer paid for the property in a contemporaneous arms-length transaction.  We hold that, although the recent arms-length sale price constituted strong presumptive evidence of the fair market value of the property, the hearing officer did not commit legal error in considering other evidence of fair market value.  In addition,

we conclude that the appraisal was rationally derived from the findings and evidence. We therefore affirm.

¶ 2. The hearing officer made the following findings, which are not in dispute. On May 5, 2017, taxpayer purchased a single-family dwelling on a 0.95-acre lot in Hartford, Vermont for $350,000. The home was built in 2000. It contains 2538 square feet of living area and 1176 square feet of basement finished area. It has seven rooms, including three bedrooms and two-and-a-half bathrooms. The home is on a concrete foundation and has a standing-seam metal gabled roof and cedar and clapboard siding. It is heated by a gas-fired hot water boiler and hot water baseboard units. The property contains a detached two-car garage with a standing-seam metal roof. The hearing officer found the construction quality to be above average, and the physical condition of the property to be average. The topography of the lot ranges from level to gently sloping, the lot is mostly open, and it is well landscaped.

¶ 3. The property is part of the Quechee Lakes Land Association (QLLA), a 1400-unit planned unit development containing a mix of single-family homes, vacant land, and condominium associations. Properties in the QLLA have access to several amenities including a golf course, club house, and tennis courts.

¶ 4. The previous owner purchased taxpayer's property in December 2016 for $252,000.[1] At that time, the assessed value of the property was $433,000. In 2017, following a town-wide reappraisal and while taxpayer's purchase of the property for $350,000 was pending, the town listers set the listed value of the property at $483,400.

¶ 5. Taxpayer filed a grievance with the listers, which was denied. Taxpayer appealed to the board of civil authority. The board affirmed the listed value. Pursuant to 32 V.S.A. § 4461,

---

[1] The Town asserts that this was a tax sale, while taxpayer claims that it was a private arms-length sale. The record is unclear on this point. The nature of the 2016 sale does not affect our analysis or conclusions in this opinion.

taxpayer appealed to the Director of PVR, who appointed a hearing officer to hear the appeal. Following an October 2018 hearing, the hearing officer issued a decision upholding the Town's new appraisal of $488,600. Taxpayer appealed to this Court. In July 2019, a three-Justice panel remanded the decision to PVR for reconsideration based on ex parte communications between the hearing officer and the Town's appraiser. Martinez v. Town of Hartford, No. 2019-060, 2019 WL 3543779, at *2 (Vt. July 12, 2019) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo19-060.pdf [https://perma.cc/J9CY-HTC5].

¶ 6.    On remand, the hearing officer vacated her previous decision and referred the appeal back to the Director of PVR. The Director reassigned the appeal to a different hearing officer who conducted another hearing in September 2019 and entered the decision at issue in this appeal. Taxpayer argued at the hearing that because he purchased the property in 2017 in an arms-length transaction, the sale price of $350,000 conclusively established the property's fair market value. In response, the Town submitted a market analysis report that valued the property at $510,000. The report was based on sales of comparable properties in the QLLA in 2015 and 2017. Taxpayer did not challenge the comparability of the properties or the adjustments made by the Town's appraiser, stating that he viewed the report as irrelevant.

¶ 7.    In his October 2019 decision, the hearing officer ruled that taxpayer had overcome the presumption of validity of the listed value by presenting evidence of the 2017 sale price. The hearing officer found that the sale was an arms-length transaction. However, he concluded that it was clear from the evidence that the seller was willing to sell the property to taxpayer at a price well below the value of similar properties in the QLLA, and the sale price did not reflect fair market value. Based on the comparable sales, the hearing officer set the fair market value of the property at $509,900, equalized to a value of $492,300. Taxpayer appealed the decision to this Court.

3

¶ 8. On appeal, taxpayer argues that the hearing officer erred in relying on evidence other than the 2017 sale price to determine fair market value. He claims that his 2017 purchase of the subject property in an arms-length transaction conclusively established the fair market value of the property to be $350,000.

¶ 9. "This Court reviews decisions by the state appraiser to ensure that they are supported by findings rationally drawn from the evidence and are based on a correct interpretation of the law." Barrett v. Town of Warren, 2005 VT 107, ¶ 5, 179 Vt. 134, 892 A.2d 152. Our review of the hearing officer's legal conclusions is "nondeferential and plenary." Lathrop v. Town of Monkton, 2014 VT 9, ¶ 7, 195 Vt. 564, 91 A.3d 378. If there is no error of law, we will not disturb an appraisal of fair market value that is supported by evidence and findings. Great Bay Hydro Corp. v. Town of Derby, 2007 VT 10, ¶ 5, 181 Vt. 574, 917 A.2d 486 (mem.).

¶ 10. Applying these standards, we conclude that, although the sale price of a property in a contemporaneous arms-length transaction is strong presumptive evidence of fair market value, it is not solely determinative and may be overcome, in rare cases, by other evidence of value. Here, the unimpeached evidence presented by the Town of numerous sales of similar properties in the same development and time frame supported the hearing officer's conclusion that the price paid by taxpayer was not reflective of the fair market value of the property, even though the sale was a bona fide transaction.

I. Legal Significance of Arms-Length Sale Price

¶ 11. The property taxation statute requires real property to be listed at its estimated fair market value. 32 V.S.A. § 3481(1)(A). Fair market value is defined as "the price that the property will bring in the market when offered for sale and purchased by another." Id. The statute provides that "[i]n determining estimated fair market value, the sale price of the property in question is one element to consider, but is not solely determinative." Id.

4

¶ 12.  "Consistent with this provision, we have held that, while sale price may represent a persuasive and favored method of determining fair market value, 'there may be situations where a court must look beyond a sale.'"  Great Bay Hydro Corp., 2007 VT 10, ¶ 6 (quoting Barrett/Canfield, LLC v. City of Rutland, 171 Vt. 196, 199, 762 A.2d 823, 825 (2000)).  Taxpayer argues that such an inquiry is appropriate only when there is evidence that the sale was not bona fide.  He claims that when it is undisputed that the transaction was arms-length—as in this case—the hearing officer is precluded from relying on other evidence to determine fair market value.  Taxpayer argues that the hearing officer in this case misinterpreted the final sentence of 32 V.S.A. § 3481(1)(A) to permit a recent bona fide sale price to be treated as merely one factor among others, rather than as conclusively establishing fair market value.  As set forth more fully below, taxpayer's interpretation is not supported by the plain language of the statute nor by our case law.

¶ 13.  When interpreting a statute, "[w]e look first to the plain meaning of the statutory language, and if it is clear and unambiguous, we will apply it, without resorting to statutory construction or additional determination of legislative intent."  Hopkinton Scout Leaders Ass'n v. Town of Guilford, 2004 VT 2, ¶ 6, 176 Vt. 577, 844 A.2d 753 (mem.).  The language of § 3481(1)(A) is clear and unambiguous: in determining fair market value, the sale price of the subject property is "not solely determinative."  The provision expressly and without qualification allows the factfinder to consider other factors beyond the recent, arms-length sale price.  See Sondergeld v. Town of Hubbardton, 150 Vt. 565, 567, 556 A.2d 64, 66 (1988) (noting that while bona fide sale is most persuasive method of establishing fair market value, § 3481 does not mandate particular method for determining value or limit type of evidence that may be presented to PVR).  We find nothing in the language of § 3481(1)(A) to support taxpayer's interpretation.

¶ 14.  Although our case law emphasizes that a recent arms-length sale establishes a strong presumption as to the fair market value of the property, we have never held that the existence of a bona fide sale price conclusively establishes fair market value or precludes the hearing officer

5

from considering competing evidence of fair market value. Taxpayer's arguments are grounded in a line of decisions beginning with Royal Parke Corporation v. Town of Essex, 145 Vt. 376, 488 A.2d 766 (1985). In Royal Parke, we explained that because fair market value "is usually a value estimated in the absence of actual, relatively concurrent, sale, of necessity many elements must go into the valuation to permit the value to closely approximate the potential return to the seller and cost to the buyer in free and open sale." Id. at 378, 488 A.2d at 768. We went on to state:

> When, however, fair market value can be established by the operation of bona fide sale transactions themselves, a market value is perforce established for appraisal purposes. There is then no need to consider factors useful in trying to estimate market value. So long as the sales evidence proves a transaction between a willing buyer and willing seller at arms length, entered into in good faith, and not to "rig" a value, the tax statute is not concerned about the reasons either buyer or seller attributed the agreed value to the property.

Id. at 378-79, 488 A.2d at 768.

¶ 15. In the subsequent case of Wilde v. Town of Norwich, 152 Vt. 327, 566 A.2d 656 (1989), we reaffirmed the principle that the recent sale price of the subject property in a bona fide transaction was the best evidence of fair market value, but left open the question of whether other evidence could ever overcome the sale price. The taxpayers in Wilde appealed the 1985 grand list value of their property, which the town had determined to be $187,210. The taxpayers presented evidence that they had purchased the property that March for $152,500. In response, the town presented an affidavit of a lister stating that the sale price did not represent fair market value because the property had been for sale for a long time and the former owner was anxious to sell. The trial court granted summary judgment in favor of the taxpayers and the town appealed. We affirmed, explaining that the "plaintiffs['] showing of an actual sale price pursuant to a contract signed within days of the listing date is strong, if not conclusive, evidence of fair market value." Id. at 329, 566 A.2d at 657. Although the town argued that it could show that the sale price was an inadequate reflection of fair market value under the circumstances, we held that we "d[id] not

6

have to determine whether such evidence would ever be acceptable under <u>Royal Parke</u>" because the town presented no specific evidence to support such a claim. <u>Id</u>. We explained that the conclusory statements in the lister's affidavit did not satisfy the town's burden "to support its appraisal by demonstrating that its valuation method complied with the law or that there was independent evidence of valuation." <u>Id</u>. at 330, 566 A.2d at 657.

¶ 16.   Similarly, in <u>Barrett/Canfield, LLC v. City of Rutland</u>, we held that the bona fide contemporaneous sale price of a property was dispositive of its fair market value. 171 Vt. at 200, 762 A.2d at 826.  In that case, the taxpayer learned that a manufacturer was planning to close its local plant and contacted the manufacturer through a realtor to see if the plant was for sale. These inquiries resulted in the taxpayer's purchasing the property for $1.764 million.   The city subsequently assessed the value of the property at $4.598 million.  The trial court determined that the sale price did not reflect fair market value because the property was inadequately exposed to the market, and set the value at $4 million.

¶ 17.   We reversed, holding that there was no requirement that a property be actively marketed to establish a bona fide sale and that it was an error of law to import such a requirement. <u>Id</u>. at 199-200, 762 A.2d at 825-26.  We acknowledged that "there may be situations where a court must look beyond a sale.  For instance, where some evidence undermines the bona fide nature of the sale, the court may extend its inquiry." <u>Id</u>. at 199, 762 A.2d at 825.  As examples, we cited a case where the evidence suggested that the parties were not acting in their own self-interest, see <u>Beach Props., Inc. v. Town of Ferrisburg</u>, 161 Vt. 368, 375-76, 640 A.2d 50, 54 (1994), and a case where a foreclosure auction sale price was significantly lower than the estimate of value by the bank's appraiser,  <u>Vt. Nat'l Bank v. Leninski</u>, 166 Vt. 577, 579, 687 A.2d 890, 892 (1996) (mem.). <u>Barrett/Canfield</u>, 171 Vt. at 199-200, 762 A.2d at 825.  However, we held that there was no reason to doubt the validity of the sale in <u>Barrett/Canfield</u>, noting that both the buyer and the seller were sophisticated corporations, the deal was concluded after nine months of negotiations, and the price

7

was approved by the taxpayer's mortgage provider based on the provider's own appraisal. Id. at 200, 762 A.2d at 826. Under these circumstances, there was "no reason to disregard the sale price." Id. at 200, 762 A.2d at 825-26.

¶ 18. In these decisions, we have consistently recognized the presumed strength of recent, arms-length sales evidence, but have not treated the presumption as conclusive. See Wilde, 152 Vt. at 329-30, 566 A.2d at 657 (expressly declining to decide whether other evidence could overcome evidence of recent bona fide sale price because town did not present such evidence); see also Sondergeld, 150 Vt. at 567, 556 A.2d at 66 ("[O]ur statute does not prescribe the method nor limit the manner in which evidence of fair market value may be presented to the Board."). Challenging the bona fide nature of the sale may be the most obvious way to overcome evidence of a recent sale price. But it is not necessarily the only way; other evidence may be sufficient to demonstrate that the sale price is not reflective of fair market value.

¶ 19. In support of his claim to the contrary, taxpayer points to our statement in Barrett/Canfield that "[a]s long as a bona fide contemporaneous sale is shown, a presumptive fair market value for the property is established, and no further inquiry is required." 171 Vt. at 200, 762 A.2d at 826. Properly viewed within the context of that opinion, which turned on whether a property had to have been actively marketed for a sale to be considered bona fide, this is not as sweeping a statement as taxpayer suggests. We held in Barrett/Canfield that because the transaction in question was voluntary and took place in an open market between parties acting in their own self-interest, it met the test for an arms-length transaction, and the trial court ought not to further question the conduct of the sale. Id.; see Beach Props., Inc., 161 Vt. at 375-76, 640 A.2d at 54 ("An arm's-length sale is characterized by these elements: it is voluntary, i.e., without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest." (quotation and alteration omitted)). The opinion did not purport to address a situation like the one here, where it was undisputed that the sale was bona fide but other evidence

8

showed that the sale price did not represent fair market value. To the contrary, we stated that a bona fide sale price established a "presumptive" value, expressly leaving open the possibility that it could be rebutted by independent evidence of valuation. Barrett/Canfield, 171 Vt. at 200, 762 A.2d at 826. Barrett/Canfield therefore does not support taxpayer's position. For the above reasons, we conclude that the hearing officer acted consistently with the law in considering alternative evidence of the property's fair market value notwithstanding his finding that the recent sale of the property was arms-length.

## II. Hearing Officer's Findings

¶ 20. We further conclude that the hearing officer's appraisal was rationally derived from the findings and evidence. Barrett, 2005 VT 107, ¶ 5. The hearing officer's findings were based largely on the market analysis report presented by the Town, which valued taxpayer's property at $510,000. This appraisal was based on an analysis of nine recent sales of comparable QLLA properties, four of which took place in 2015 and five of which took place in 2017 within six months of taxpayer's purchase of his property. The sites, zoning, design, heating and cooling, functionality, roofs, parking, and amenities of the comparable properties were substantially similar to taxpayer's property. Other than one property that sold for $412,900, which the hearing officer eliminated as an outlier with respect to its "Gross Adjustment Ratio," the 2017 sale prices ranged from $499,000 to $540,000. The adjusted prices of the properties ranged from $501,400 to $515,000, with a median value estimate of $509,900.[2] The hearing officer found that the

---

[2] At oral argument, taxpayer noted that taxpayer's property was not factored into the hearing officer's calculation of fair market value as one of the comparable sales. The Town's attorney conceded that the sale should have been included in the comparable sales analysis and estimated that doing so would have reduced the appraisal value by approximately $3000. Because taxpayer did not raise this argument below, however, we do not view this as a basis to disturb the hearing officer's decision. See TD Banknorth, N.A. v. Dep't of Taxes, 2008 VT 120, ¶ 33, 185 Vt. 45, 967 A.2d 1148 (explaining that this Court "will not address arguments raised for the first time at oral argument").

comparable properties were "very comparable" to taxpayer's properties and that their sale prices more accurately reflected fair market value than the price taxpayer paid in 2017.

¶ 21. These findings are rationally derived from the evidence. Barrett, 2005 VT 107, ¶ 5. The Town's report was comprehensive and contained a large number of recent sales of very similar properties in the same market as taxpayer's property. Taxpayer did not object to the Town's market analysis report or challenge the comparability of the sales or the adjustments that the appraiser made to those sales to derive a value for his property.[3] Under these circumstances, the hearing officer did not abuse his discretion by affording greater weight to this independent market data than the sale price of taxpayer's property in determining fair market value. See Jackson Gore Inn v. Town of Ludlow, 2020 VT 11, ¶ 44, __ Vt. __, 228 A.3d 643 ("Although the hearing officer is required to consider all the evidence, whether it be expert or lay, in determining fair market value, the weight to be accorded such evidence lies with the hearing officer."). The hearing officer's choice of methodology is supported by the evidence and findings and is not contrary to law. See Great Bay Hydro Corp., 2007 VT 10, ¶ 6 ("[W]e will not second-guess the state appraiser's choice of methodology if supported by the evidence and findings, and sound in law.").

¶ 22. We emphasize that our decision in no way alters the well-settled rule that the contemporaneous bona fide sale price of a subject property is strong, presumptive evidence of the property's fair market value. Royal Parke, 145 Vt. at 378-79, 488 A.2d at 768. Every other kind of evidence, including evidence of comparable sales, purports to establish indirectly what the bona

---

[3] On appeal taxpayer argues that the Town's market analysis was inherently less reliable evidence than the sale price because it involved subjective decisions regarding fair market value. To the extent that this argument is a restatement of the position that the bona fide sales prices conclusively established the market value for property tax purposes, we have rejected that argument above. If taxpayer is challenging the weight of the comparable sales evidence, taxpayer failed to raise any specific objections to the comparable sales or the report in general below and therefore has failed to preserve this argument for review. Zlotoff Found., Inc. v. Town of South. Hero, 2020 VT 25, ¶ 33, __ Vt. __, __ A.3d __ (explaining that party must raise issue with specificity and clarity below to preserve issue for appeal).

fide sale price establishes directly: "the price that the property will bring in the market when offered for sale and purchased by another."  32 V.S.A. § 3481(1)(A).  But because the Legislature has directed that the sale price "is not solely determinative," id., and given the strength of the Town's alternative evidence of comparable sales and the absence of any challenges to those comparable sales, we conclude that the hearing officer did not err by relying on the comparable sale evidence in concluding that the sale price did not accurately reflect fair market value.

Affirmed.

FOR THE COURT:

_____

Associate Justice

11